WILLIAM LEVEEN CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 550. Promulgated April 7, 1944.

*Louis Winsten, C. P. A.,* for the petitioner.
*Sidney B. Gambill, Esq.,* for the respondent.

OPINION.

STERNHAGEN, *Judge:* The taxpayer assails a deficiency of $687.96 in excess profits tax for 1940. Internal Revenue Code, ch. 2, subch. E, part I, sec. 710, *et seq.* The facts are all stipulated, as follows:

1. The petitioner, for all years pertinent to this proceeding, was a corporation organized under the laws of the State of New York. Since its incorporation, on January 2, 1930, the petitioner has been engaged in the business of jobbing woolens.

2. For all years pertinent to this proceeding, the petitioner kept its books and filed its tax returns on an accrual basis, and for taxable periods of twelve months ended on December 31st of each year.

Prior to 1939 the petitioner had elected and was allowed to deduct bad debts on an actual charge-off basis. On April 17, 1939 the petitioner filed a request with the Commissioner of Internal Revenue for permission to adopt the reserve method of treating bad debts, beginning with its taxable year ended December 31, 1939. This request was, granted to the petitioner by a letter from the Commissioner of Internal Revenue dated May 12, 1939.

3. In filing its 1939 income tax return the petitioner claimed a deduction for bad debts in the amount of $14,729.99 on the reserve basis. There was actually charged off the amount of $14,499.79, representing bad debts sustained in that year. The $14,499.79 consisted of the following accounts and in the following amounts:

| | |
|---|---|
| I. Schwartz and Son | $11,700.35 |
| Best Made Middy Co | 2,434.25 |
| Emory Sportwear Co | 365.19 |

4. The sales by the petitioner to the above-named customers for the year 1936 through 1939 were as follows:

| Year | I. Schwartz and Son | Best Made Midday Co. | Emory Sportwear Co. |
|---|---|---|---|
| 1936 | $17,276.53 | $4,231.89 | None |
| 1937 | 25,824.84 | 12,650.22 | None |
| 1938 | 45,618.27 | 25,591.12 | $7,411.92 |
| 1939 | 49,346.05 | 5,546.13 | None |

5. The net sales, other income and cost of sales of the petitioner for the calendar years 1936, 1937, 1938 and 1939 were as follows:

|  | 1936 | 1937 | 1938 | 1939 |
|---|---|---|---|---|
| Net sales | $384, 210. 79 | $258, 305. 42 | $289, 156. 24 | $420, 855. 79 |
| Other Income | 6, 845. 88 | 7, 662. 50 | 8, 068. 57 | 10, 338. 28 |
| Cost of Sales | 339, 569. 71 | 228, 974. 56 | 251, 755. 30 | 369, 291. 31 |

6. The amounts of bad debt losses sustained by the petitioner during the years 1935 through 1940, which were claimed on petitioner's income tax returns and allowed by the Commissioner of Internal Revenue, were as follows:

| | | | |
|---|---|---|---|
| 1935 | $8, 727. 48 | 1938 | $917. 51 |
| 1936 | None | 1939 | *14, 729. 99 |
| 1937 | 3, 492. 10 | 1940 | *4, 736. 03 |

*Prior to 1939 the petitioner charged off bad debts on the actual charge-off basis. For the years 1939 and 1940 petitioner used the reserve basis for claiming bad debt deductions.

7. The bad debt loss of $11,700.35 for 1939, represented by the account of I. Schwartz and Son, was for sales made during September, October and November, 1939. The bad debt loss of $2,434.25 for 1939, represented by the account of Best Made Middy Co., was for sales made during July, August and September, 1939. The bad debt loss of $365.19 for 1939, represented by the account of Emory Sportwear Co., was for sales made during December, 1938.

8. The following is a schedule showing petitioner's net sales, other income, cost of sales, deductions and net income for the year ended December 31, 1940:

| | | |
|---|---|---|
| Net Sales | $473, 602. 55 | |
| Other Income | 9, 369. 37 | |
| | | $482, 971. 92 |
| Cost of Sales | $418, 873. 75 | |
| Deductions | 39, 621. 89 | |
| | | 458, 495. 64 |
| Net Income | | $24, 476. 28 |

9. Petitioner's normal tax net income (for income, declared value excess profits and defense tax purposes, as distinguished from excess profits net income) for the years 1936 to 1940, both inclusive, was as follows:

| | |
|---|---|
| 1936 | $18, 472. 34 |
| 1937 | 6, 684. 52 |
| 1938 | 13, 424. 84 |
| 1939 | 14, 373. 64 |
| 1940 | 24, 476. 28 |

10. Petitioner paid or incurred the following income and declared value excess profits taxes with respect to its taxable net income for the years 1936 through 1940, both inclusive:

| | |
|---|---|
| 1936 | $4, 738. 36 |
| 1937 | 1, 166. 82 |
| 1938 | 1, 804. 48 |
| 1939 | 1, 937. 31 |
| 1940 | 4, 156. 33 |

The controversy is narrow and turns on the application of subsection 711 (b) (1) (K) (ii). The tax is imposed upon the profits of the tax year 1940 to the extent that such profits are in excess of

the average profits·of the preceding four years, the base period, adjusted as prescribed. The taxpayer claims an adjustment in the base period income because its 1939 deduction for bad debts was abnormally large in amount, thus unduly lessening the standard of base period income. It is agreed that the bad debt deduction was not abnormal in class, and that it is abnormal only in amount. Since the bad debt deduction for 1939 is in excess of 125 percent of the average of similar deductions for earlier years, the abnormal portion may be eliminated from the deduction ("disallowed"), thus raising the figure of average net income of the base period to be used as a standard of comparison only if, as required by subsection 711 (b) (1) (K) (ii), the taxpayer "establishes that the abnormality or excess is not a consequence of an increase in the gross income" for the base period. The issue in the case is whether the taxpayer has established this crucial though negative fact.

To establish such a negative may be a difficult task, and how it is to be accomplished cannot be formulated in a rule. Perhaps the proof is best made by proving affirmatively that the abnormal deduction is a consequence of something other than the increase in gross income and that such proven cause is the converse or opposite of an increase in gross income and could not be identified with an increase in gross income. But difficult as the proof of the negative may be, it is what the statute requires; and, since it is required in clear and express terms, its rigors may not be abated by softening construction.

From the stipulation, it can not be found as a fact that the abnormality in the bad debt deduction of 1939 was not a consequence of an increase in the gross income for the base period. It does not in express terms show the gross income for such years. Apparently, however, both parties regard the figures shown in paragraph 5 as reflecting gross income, even though not so stated in terms. Without quibbling about this, therefore, we proceed upon the hypothesis that gross income is the difference between a minuend comprising net sales and other income and a subtrahend of cost of sales. Such difference for the base years is 1936, $51,486.96; 1937. $36,993.36; 1938, $45,469.51; 1939, $61,902.76. Thus it appears that the average gross income for 1936, 1937, and 1938, was $44,649.94, and the gross income for 1939 ($61,902.76) is in excess of this average by $17,252.82. The abnormal or excess part of the 1939 bad debt deduction was $9,993.96, and mathematically therefore the two increases may reasonably be regarded as having relation to each other—the increase in bad debts is coincident with and therefore related to the contemporaneous increase in gross income. Although such a relation is not necessarily that of cause and consequence, the taxpayer's success depends upon proof that it was not.

The taxpayer argues that the charge to the bad debt reserve (newly established in 1939) was related to the bad debts of three customers. But this does not help it, assuming *arguendo* that the argument is available to it under the statute. The bad debt charged off in 1939 in the Schwartz account was $11,700.35, which is said to be in respect of sales made in September, October, and November of the same year. The sales in the same account had increased from $17,276.53 in 1936 to $25,824.84 in 1937, to $45,618.27 in 1938, to $49,346.05 in 1939. While, as we say, this method of applying the statute by identifying accounts comprising the bad debts addition to the reserve is not shown to be within the scheme of the statute, still it is not indicative that the bad debt deduction attributable to the Schwartz account is not a consequence of the increase in gross income; it rather indicates that it is.

We are of opinion that the taxpayer has not established, as the statute requires, that the abnormality or excess amount of its bad debt deduction in 1939 is not a consequence of the increase in its gross income, and the Commissioner's determination must be sustained.

*Decision will be entered for the respondent.*