R. C. HARVEY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3600.   Promulgated July 16, 1945.

432

*Philip A. Hendrick, Esq.*, for the petitioner.
*Joseph D. Donohue, Esq.*, for the respondent.

434

OPINION.

BLACK, *Judge*: The question presented involves petitioner's excess profits tax liability for the fiscal year ended August 31, 1941, under subchapter E of chapter 2 of the Internal Revenue Code, which subchapter was inserted in the code by Title II, section 201, of the Second Revenue Act of 1940, and is sometimes cited as the "Excess Profits Tax Act of 1940." These provisions of the code have been amended from time to time. Only those amendments which are here material will be noted.

Under section 710 (a) (1)[1] the tax is imposed on the "adjusted excess profits net income" as defined in section 710 (b) as meaning "the excess profits net income (as defined in section 711) minus the sum of" (1) a specific exemption of $5,000; (2) the "excess profits credit" allowed under section 712; and (3) an item not present in this proceeding. The question here arises in connection with the computation of the excess profits credit, which in turn involves the application of section 711 (b) (1) (H) and (K), as will more fully appear below.

Under section 711 (a), the determination of the "excess profits net income" depends in part upon whether the "excess profits credit" is computed under section 713 or section 714. Section 712 (a), as amended by sections 13 and 17 of the Excess Profits Tax Amendments of 1941, provides in part that:

In the case of a domestic corporation which was in existence before January 1, 1940, the excess profits credit for any taxable year shall be an amount computed under section 713 or section 714, whichever amount results in the lesser tax under this subchapter for the taxable year for which the tax under this subchapter is being computed.

The excess profit credit when computed under section 713 is based on income, and when computed under section 714 it is based on invested capital. In the statement attached to the deficiency notice the respondent, among other things, said:

Inasmuch as you are a domestic corporation and were in existence prior to January 1, 1940, your credit has been computed under section 713 (the income

---

[1] All references to section numbers are sections of the Internal Revenue Code unless otherwise indicated.

credit method) for the purpose of this determination of tax liability, due to the fact that the credit so computed results in a lesser excess profits tax as contemplated by section 712 of the said Code. It follows, therefore, that your excess profits net income for the year in question has also been computed under the income credit method herein in accordance with the provisions of section 711 (a) (1) of the above-mentioned Code.

Petitioner does not contest the respondent's method of computation mentioned in the last sentence of the above quotation from the deficiency notice. As previously stated, the contest arises in connection with the computation of the excess profit credit.

One of the many steps which the parties agree must be taken in the determination of petitioner's excess profits credit under section 713, as amended, is to determine under section 713 (f) (1) "for each of the taxable years of the taxpayer in its base period, the excess profits net income for such year, or the deficit in excess profits net income for such year." The parties agree that the "taxable years of the taxpayer in its base period" are the fiscal years ended August 31, 1937, to August 31, 1940, both inclusive. See section 713 (b) (1) (A), as amended. They disagree only as to the "excess profits net income" or the "deficit in excess profits net income" for the fiscal year which began September 1, 1938, and ended August 31, 1939. See sec. 713 (c), as amended.

The determination of whether petitioner had an excess profits net income or a deficit in excess profits net income for the base period year ended August 31, 1939, depends upon the proper application to the facts herein of section 711 (b) (1), as amended by sections 3 and 17 of the Excess Profits Tax Amendments of 1941, the material provisions of which are set forth in the margin.[2]

---

[2] SEC. 711. EXCESS PROFITS NET INCOME.

* * * * * * *

(b) TAXABLE YEARS IN BASE PERIOD.—

(1) GENERAL RULE AND ADJUSTMENTS.—The excess profits net income for any taxable year subject to the Revenue Act of 1936 shall be the normal-tax net income, as defined in section 13 (a) of such Act; and for any other taxable year beginning after December 31, 1937, and before January 1, 1940, shall be the special-class net income, as defined in section 14 (a) of the applicable revenue law. In either case the following adjustments shall be made (for additional adjustments in case of certain reorganizations, see section 742 (e)):

* * * * * * *

(H) PAYMENT OF JUDGMENTS, AND SO FORTH.—Deductions attributable to any claim, award, judgment, or decree against the taxpayer, or interest on any of the foregoing, if abnormal for the taxpayer, shall not be allowed, and if normal for the taxpayer, but in excess of 125 per centum of the average amount of such deductions in the four previous taxable years, shall be disallowed in an amount equal to such excess;

* * * * * * *

(J) ABNORMAL DEDUCTIONS.—Under regulations prescribed by the Commissioner, with the approval of the Secretary, for the determination, for the purposes of this subparagraph, of the classification of deductions—

(i) Deductions of any class shall not be allowed if deductions of such class were abnormal for the taxpayer, and

(ii) If the class of deductions was normal for the taxpayer, but the deductions of such class were in excess of 125 per centum of the average amount of deductions of such

The respondent in his brief contends that his determination should be sustained for the same reasons as are given in the statement attached to the deficiency notice, which statement we have set out at the beginning of this report. Petitioner contends that its treatment of the $15,000 item in its excess profits tax return was proper as falling within the provisions of section 711 (b) (1) (H); that the facts show that the payment of the $15,000 to Gordon was "not a consequence of an increase in the gross income of the taxpayer in its base period or a decrease in the amount of some other deduction in its base period," and was "not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by the taxpayer" as the quoted matter is used in section 711 (b) (1) (K) (ii); and that section 711 (b) (1) (J) (ii) has no application to this proceeding.

We agree with the petitioner's contentions, and shall consider first the application of section 711 (b) (1) (H). We think the payment of $15,000 to Gordon was attributable to a "claim" by Gordon for damages due to a breach of contract by petitioner. In his brief the respondent argues that the said payment "was not the payment of a claim but merely the payment of anticipated commissions and share of net profits." We do not agree. On or about September 12, 1938, when petitioner's president declared its contract with Gordon to be inoperative and at an end, the contract had several years yet to run. Gordon immediately threatened to sue petitioner for damages for breach of contract and engaged counsel for that purpose. As a result a settlement was reached on October 27, 1938, whereby petitioner paid Gordon the $15,000 in question, plus $2,500 on account of purchases of materials covering the period September 1 to October 27, 1938. Thereupon Gordon executed a complete release to petitioner of all demands against it. It is our opinion that the payment of the $15,000 was in settlement of Gordon's "claim" for damages for breach of contract, and we have so found as a fact.

Was the deduction attributable to the claim "abnormal for the taxpayer" as that term is used in section 711 (b) (1) (H)? We think it was. Webster's New International Dictionary, Second Edition, Unabridged, defines abnormal as "Deviating from the normal condition; not corresponding to the type; markedly or strangely irregular."

---

class for the four previous taxable years, they shall be disallowed in an amount equal to such excess.

(K) RULES FOR APPLICATION OF SUBPARAGRAPHS (H), (I), AND (J).—For the purposes of subparagraphs (H), (I), and (J)—

*     *     *     *     *     *     *

(ii) Deductions shall not be disallowed under such subparagraphs unless the taxpayer establishes that the abnormality or excess is not a consequence of an increase in the gross income of the taxpayer in its base period or a decrease in the amount of some other deduction in its base period, and is not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by the taxpayer.

We are of the opinion that the claim in question comes within this definition. The respondent cites section 30.711 (b)–2 of Regulations 109, inserted by paragraph 10 of T. D. 5045, Cumulative Bulletin 1941–1, p. 69, which, among other things, provides that "A class of deductions is abnormal *only* if the taxpayer had no deductions of that class in the taxable years prescribed for determining average deductions." (Emphasis supplied.) From this citation the respondent in effect argues that our holding should be against the petitioner for lack of proof, since "It is submitted that nowhere in the record of this case has petitioner established that it had no other deductions in other years of the base period for obtaining cancellation of contracts." In schedule A of its excess profits tax return for the taxable year in question, which was introduced in evidence by respondent, petitioner did not claim on line 17 (c) or elsewhere any similar adjustment for any other taxable year of the base period. This schedule A is headed "Excess Profits Credit Based on Income" and covers the years ended August 31, 1937, to 1940, inclusive, and line 17 thereof is divided as follows: "(a) Abnormal judgment liabilities." Of these none are shown for any of the base period years. "(b) Abnormal expenditures for intangible drilling and development costs." Of these none are shown for any of the base period years. "(c) Other abnormal deductions." Of these none are shown for any of the base period years, except the $15,000 here in question for the fiscal year ended August 31, 1939. This evidence being in the record, we can not sustain respondent's contention that petitioner has failed to prove that the deduction which it claims was an abnormal one.

The respondent also argues that the payment of $15,000 to Gordon was not an abnormal deduction for petitioner because petitioner, as the respondent contends, was the real party benefited, in that it was released from certain dictatorial control given Gordon by the contract and was further benefited by not having to pay such large sums to Gordon for the remaining years of the contract. In determining whether a deduction attributable to a claim against the taxpayer is "abnormal for the taxpayer" we do not regard as material the factor as to whether the taxpayer was or was not benefited by the payment of the claim. We find no such requirement in the statute itself. We think the payment of the $15,000 in question was such a deviation from the normal conduct of petitioner's business that the deduction attributable thereto was "abnormal for the taxpayer" as that term is used in section 711 (b) (1) (H). It follows that the adjustment provided for under this subparagraph (H) must be made unless petitioner has failed to establish what is required of it under subparagraph (K) (ii) of section 711 (b) (1).

The fact to be established by petitioner under section 711 (b) (1) (K) (ii) is a negative fact. *William Leveen Corporation*, 3 T. C. 593. In that case, among other things, we said:

To establish such a negative may be a difficult task, and how it is to be accomplished can not be formulated in a rule. Perhaps the proof is best made by proving affirmatively that the abnormal deduction is a consequence of something other than the increase in gross income and that such proven cause is the converse or opposite of an increase in gross income and could not be identified with an increase in gross income. But, difficult as the proof of the negative may be, it is what the statute requires; and, since it is required in clear and express terms, its rigors may not be abated by softening construction.

The respondent in the instant proceeding does not contend that the abnormality is a consequence of an increase in the gross income of petitioner in its base period. He does contend, however, that if we should find for the petitioner under section 711 (b) (1) (H), then "the facts in the case affirmatively establish that the payment was a consequence of a decrease in another deduction (commissions for materials purchased) in the base period, and the disallowance of the deduction is precluded by the provisions of Section 711 (b) (1) (K) (ii) of the Code."

The decrease in commissions referred to by the respondent is the decrease that occurred *after* the payment of $15,000 to Gordon had been made. The respondent points out that if Gordon had continued his contract he would have been entitled to receive from petitioner $62,877.10 for the period from October 27, 1938, the date the $15,000 payment was made, to June 15, 1941, the date his contract would have expired, whereas it only cost petitioner $2,595.79, the total additional amount paid Farnsworth for performing the duties formerly performed by Gordon. From this the respondent argues that the payment of the $15,000 to Gordon was a consequence of a decrease in commissions. We think the respondent has a misconception of the word "consequence" as used in the statute. In his reply brief the respondent quotes the following definition of the word from Webster's New International Dictionary, Second Edition:

Consequence * * * 1. That which follows something on which it depends; that which is produced by a cause or ensues from any form of necessary connection, or from any set of conditions; a natural or necessary result;—contrasted with mere *sequence;* as, the consequences of one's acts.

Immediately following the quoted definition the respondent makes this statement: "Respondent does not believe the above definition of the word or its use in the statute warrants the conclusion that where a relationship is shown between an abnormal deduction and a decrease in another deduction Section 711 (b) (1) (K) (ii) is ineffective unless the abnormal deduction follows rather than precedes the decrease in the other deduction." We must construe the statute as we find it. The decrease in commissions as argued by the respondent may have

been the consequence of the termination of the contract with Gordon, but it is difficult to see how the termination and payment of damages to Gordon could be a consequence of the subsequent reduction of commissions. The respondent seems to have placed "the cart before the horse."

All of this, however, does not relieve petitioner of the burden of establishing the "crucial though negative fact" required by section 711 (b) (1) (K) (ii). *William Leveen Corporation, supra.* We think that petitioner has successfully shown that the abnormality in question was the direct consequence of the differences between petitioner (through Harvey) and Gordon that arose shortly after the death of Norton and was not the consequence of one or more of the factors enumerated in section 711 (b) (1) (K) (ii). We have so found as an ultimate fact and, therefore, we sustain the petitioner on this point.

Having found that the $15,000 payment in question falls within the provisions of section 711 (b) (1) (H), we also agree with the petitioner that section 711 (b) (1) (J) (ii) has no application to this proceeding.

Reviewed by the Court.

*Decision will be entered under Rule 50.*