WENTWORTH MANUFACTURING COMPANY, PETITIONER, *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6698.   Promulgated May 28, 1946.

*Richard W. Wilson, Esq.*, and *Harry Janin, C. P. A.*, for the
petitioner.

*J. T. Haslam, Esq.*, for the respondent.

## OPINION.

Murdock, *Judge*: The petitioner filed a claim for relief under section 711 (b) (1) (J). Section 711 is entitled "Excess Profits Net Income." (b) is entitled "Taxable Years in Base Period." (1) is entitled "General Rule and Adjustments" and provides that certain adjustments shall be made to net income of the base period years. One of the adjustments is set forth in (J), entitled "Abnormal Deductions." It provides that, under regulations for the determination of the classification of deductions:

(i) Deductions of any class shall not be allowed if deductions of such class were abnormal for the taxpayer, and

(ii) If the class of deductions was normal for the taxpayer, but the deductions of such class were in excess of 125 per centum of the average amount of deductions of such class for the four previous taxable years, they shall be disallowed in an amount equal to such excess.

Rules for the application of this subparagraph and others are set forth in subparagraph (K). One of them is that the deduction shall not be disallowed "unless the taxpayer establishes that the abnormality or excess is not a consequence of an increase in the gross income of the taxpayer in its base period or a decrease in the amount of some other deduction in its base period, and is not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by the taxpayer." Another provision is that the amount to be disallowed shall not exceed the amount by which the deductions of the class for the base year exceed the deductions of the class for the taxable year.

The petitioner filed a claim on Form 843 setting forth 21 alleged abnormalities, or excessive deductions, of 13 different classes in the 4 base period years, which it contends should be disallowed and its net income for those base periods correspondingly increased. The Commissioner stated in his notice that he had carefully considered the claim, but had denied it because the petitioner had not established "that the abnormality or excess claimed is not a consequence of an increase in your gross income in your base period or a decrease in the amount of some other deduction in the said base period and is not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by your company." The pleadings place in issue the question of whether or not the abnormalities were a consequence of an increase in gross income, a decrease in some other deduction, or a change in the type, manner of operation, size, or condition of the business. The amount of each abnormality emerges largely, if not entirely, by the use of simple mathematics, once a proper classification is selected. Figures showing the exact amount of each abnormality are in evidence and there is no difference between the parties as to the figures themselves. The petitioner has introduced evidence in regard to each abnormality to show that it was not a consequence of an increase in gross income, a decrease in some other deduction, or a change in the type, manner of operation, size, or condition of the business. It has made out a prima facie case on this issue in so far as it relates to all of the items except wages of inspectors and measurers. The Commissioner has not overcome that showing and, indeed, has made little or no effort to do so. He argues that several of the expenditures resulted in certain changes, but that is not material—the issue under the statute is whether the abnormality was the consequence of one of the changes mentioned in the statute.

*R. C. Harvey Co.*, 5 T. C. 431. Thus, on the only issue presented by the pleadings, the petitioner wins except as to the one item.

The Commissioner argues in his brief that (1) some of the items relied upon by the petitioner are not "abnormal deductions," since they are not deductible under section 23, but are a part of the cost of goods sold, (2) some of the items do not constitute a separate class for the purpose of the computation of an abnormality under section 711 (b) (1) (J), and (3) one item comes under (H), not (J), and must be disallowed because (H) was not mentioned in the claim. These are affirmative defenses not mentioned in the notice rejecting the claim and not pleaded. The petitioner received notice that its claim was rejected for certain definitely stated reasons. It can not fairly be required to anticipate these other defenses or to introduce evidence to negative unfavorable possibilities upon which they are conjectured. The respondent, if he desired to inject such issues into this proceeding, should have pleaded those defenses, as required by the rules of the Court. Since they are not properly before us, they may not be considered as possible bases for denying the claim, either in whole or in part. *Maltine Co.*, 5 T. C. 1265; *Warner G. Baird*, 42 B. T. A. 970; *Robert C. Coffey*, 21 B. T. A. 1242.

The petitioner began to employ inspectors and measurers in 1939 to overcome what it regarded as a serious defect in the manner of operation of its business. The fault in the manner of operation of the business was that too many garments which did not conform to the required standards of size were going out to the customers. Many of these were being returned and had to be done over at additional cost to the petitioner, but the petitioner's chief concern was that its customers would become dissatisfied. The petitioner, therefore, decided to change and actually changed the manner of operation of its business to this extent—it employed about 30 inspectors and measurers who were instructed to watch the operations of the various employees, to inspect and measure garments as they saw fit during the process of manufacture in an effort to discover where the mistakes in size were being made, and to eliminate the making of those mistakes as far as possible, either by pointing out the faults in their method of operation to various employees, or by instructing individual employees so that the errors did not occur so frequently. A substantial sum was paid as wages to these employees during 1939 and a much larger amount was paid to them in 1940. They apparently performed their duties successfully and it was found after 1940 that their services were no longer necessary in that thereafter the number of garments which did not conform to the standards of size was tolerable.

The test laid down by subsection (K) (ii) is whether the abnormality is a consequence of the change. The question of whether some change was a consequence of the abnormality is immaterial.

*R. C. Harvey Co., supra.* It is immaterial whether some change in the manner of operation of the business resulted from the employment of inspectors and measurers. The important point is that the abnormalities in the wages of these employees was a consequence of a change in the manner of operation of the business. If there had been no change in the manner of operation of the business, the inspectors and measurers would never have been employed and no abnormality would have resulted, so that the very act of employing these people and using them was a change in the manner of operation of the business and the abnormality was a consequence of that change.

The important distinction between cause and effect in this connection can be illustrated by comparing the employment of inspectors and measurers with the employment of efficiency engineers. The engineers were employed merely to study the manner of operation of the business. They took no part in and made no contribution to the operation of the business, so that the employment of those engineers did not itself change the manner of operation of the business. Changes which they recommended as a result of their studies were later put into effect. Those changes were a consequence of the employment of the experts. But the employment of the experts was not a consequence of any change in the manner of operation of the business. Cf. *R. C. Harvey Co., supra.*

There was a change in 1939 and 1940 in the manner of operation of the business of the taxpayer to the extent that inspectors and measurers were employed and used in the business. The abnormalities for 1939 and 1940 in the wages of these employees are a direct consequence of that change in the manner of operation of the business. Subsection (K) (ii) provides that under such circumstances no disallowance of the deduction is to be made.' This result, so far as we can see, is in accordance with the spirit and purpose of section 711.

Reviewed by the Court.

*Decision will be entered under Rule 50.*