THE O. HOMMEL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6792. Promulgated February 24, 1947.

*F. T. Weil, Esq.,* and *S. Allen Vatz, Esq.,* for the petitioner.
*Hobby H. McCall, Esq.,* for the respondent.

## OPINION.

Harron, *Judge*: The only question to be decided is whether petitioner has established that the abnormality in amount of its total bad debt deduction in 1938 was "not a consequence of an increase in the gross income" for its base period, as it is required to do by the terms of section 711 (b) (1) (K) (ii) of the Internal Revenue Code. The parties are agreed that a total bad debt deduction which was taken and allowed for the year 1938 in the amount of $15,798.18 was not abnormal in class, but was abnormal in amount; and that it was in excess of 125 per cent of the average amount of petitioner's bad debt deductions for the four taxable years prior to 1938. Sec. 711 (b) (1) (J) (ii).

The evidence shows that petitioner's business did not involve sizable losses from bad debts in the base period years and two years before, and that there was not a correlation between the volume of its business, as represented by its net sales, and losses from bad debts. That is, bad debt losses bore no constant percentage relation to volume of business; they did not increase as the volume of business increased, nor vice versa. With reference to the 1938 bad debt deduction, it represented, for the most part, a loss from an account with one customer, Hayes-Custer Stove, Inc., which went bankrupt in 1937. The loss from the indebtedness of that company in 1938 was $15,075.47 out of total bad debts for the year of $15,798.18. It is this one bad debt loss in 1938 which gives rise to the issue presented and, accordingly, consideration of the question revolves about that one bad debt loss.

The gross income of petitioner in the base period years ranged around $200,000; it increased in 1936 and 1937, but decreased in 1938.

The average gross income received in 1936 and 1937 was $232,635, and the gross income in 1938, $208,454, was less than the average of the two preceding base period years. Losses from bad debts decreased in 1936, when gross income increased. Losses from bad debts increased in 1938, when gross income decreased. This comparison of the trends of gross income in 1936, 1937, and 1938 with the losses from bad debts in the same years shows that the increase in the 1938 loss from bad debts was not a consequence of an increase in gross income. Cf. *William Leveen Corporation*, 3 T. C. 593, 595. The abnormal or excess part of the 1938 loss from bad debts was $8,224.18. This was very much greater than the total bad debt deduction for the year 1936 and the year 1937, when gross income increased; and, as noted above, 1938 gross income decreased.

The sales to Hayes-Custer Stove, Inc., declined in 1936 and 1937, and none were made in 1938. The question presented relates to the loss on this account, deducted in 1938, and the deduction of $15,075.47 in 1938 resulted from sales made to Hayes-Custer in 1936 and 1937. About one-half of the bad debt loss resulted from sales made to Hayes-Custer in 1937, in which year sales to Hayes-Custer were almost half of what they had been in 1936. At the same time sales to other customers increased substantially in 1936 and 1937, reaching about $1,000,000 in 1937.

The situation here is clearly one in which the abnormality or excess amount is a single item of loss due to the failure of one of many customers. Under the facts, we can not hold that the abnormality or excess in 1938 was "a consequence of an increase in the gross income of the taxpayer in its base period." It is held that it was not such "a consequence," and that respondent erred in his determination. Petitioner is entitled to have the excess of the 1938 bad debt deduction disallowed as a deduction and restored to its base period excess profits net income in computing its excess profits credit for the years 1940 and 1941. The bad debt excess of $8,224.18 for the computation of the 1940 excess profits tax will result in an excess profits credit carry-over from 1940 for credit in 1941. The parties have so agreed.

Reviewed by the Court.

*Decision will be entered for under Rule 50.*

TURNER, *J.*, dissents.