A. B. Carter, Incorporated v. Commissioner.
A. B. Carter, Inc. v. Commissioner
Docket No. 23727.
United States Tax Court
1950 Tax Ct. Memo LEXIS 126; 9 T.C.M. (CCH) 682; T.C.M. (RIA) 50195; August 14, 1950
*126 John C. Reid, Esq., 306 Southern Bldg., Washington 5, D.C., for the petitioner. George J. LeBlanc, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding is based on respondent's rejection of claims for refund of excess profits taxes for the years 1941 to 1945, inclusive, in the respective amounts of: Year
Amount
1941
$4,758.52
1942
5,916.89
1943
6,407.73
1944
5,579.71
1945
5,637.30 The claims in question were based on section 711(b)(1)(J), Internal Revenue Code. Whether or not these claims were properly rejected is the sole issue involved. Some of the facts have been stipulated and are found as set forth in the written stipulation. Findings of Fact Petitioner during the taxable years involved was a corporation with its principal office located at Gastonia, North Carolina. Its returns were filed with the collector of internal revenue for the district of North Carolina. In 1939 petitioner owned and operated three manufacturing plants in North Carolina, one at Gastonia, one at Lincolnton, and one at Taylorsville. At the Gastonia plant petitioner manufactured certain small metal *127 devices known as "travelers" and "knotters" which were used by cotton mills in the spinning of yarns. The plants at Lincolnton and Taylorsville both manufactured carded yarns. The Lincolnton plant had a capacity of about twice that of the Taylorsville plant. It produced yarns of a 24 to 30 count while the yarns produced by the Taylorsville plant were 18 to 24 count. These yarns were sold to hosiery and other knitting mills. Both the Lincolnton and Taylorsville plants sustained operating losses in 1938 and the early months of 1939, due largely to economic conditions affecting the textile industry generally. On May 19, 1939, petitioner sold its Taylorsville plant for approximately $18,000 and sustained a loss thereon of $25,492.75. Of that amount $3,277.48 was allocated to the land and was treated as a capital loss. The remainder, $22,251.27, was allocated to depreciable assets and was deducted in full in computing petitioner's taxable net income for 1939. The sale of the Taylorsville plant, or the contract for its sale, was made by A. B. Carter, now deceased, who was then petitioner's president, on April 21, 1939. He was ill at the time, having previously suffered several heart *128 attacks. He died September 15, 1939, at the age of 63 years. He contracted to sell the Taylorsville plant without consulting his associates. Immediately after the sale they undertook to repurchase the property but the purchaser refused to sell it back. Thereafter petitioner did not produce any of the 18 to 24 count yarns. Plans for expanding the metal fabricating division of its business located at Gastonia were considered by the petitioner in 1939. A new plant for that purpose was completed in May 1940. The proceeds from the sale of the Taylorsville plant went into petitioner's general fund. Petitioner's condensed balance sheet of December 31, 1939, shows current assets of approximately $200,000, including $110,650.62 cash, total assets of over $340,000, and total liabilities of approximately $49,000. Petitioner's excess profits net income for the base period 1936 to 1939 and for the succeeding years 1940 to 1945, inclusive,and its excess profits tax credits, based on income, for the years 1942 to 1945, inclusive, as determined by the respondent, were as follows: Excess profits
Excess profits
Year
net income
tax credits
1936
$122,090.60
1937
44,177.72
1938
(2,685.11)
1939
31,227.28
1940
31,006.43
1941
136,487.03
1942
85,557.68
$58,650.51
1943
77,698.30
58,105.14
1944
183,212.60
58,698.87
1945
162,952.22
58,631.50
*129 In determining the petitioner's average base period income and its excess profits credits for the years involved, based on income, respondent disallowed the capital loss deduction of $2,000 claimed in 1939 on the sale of the plant but did not disallow the deduction of the ordinary loss of $22,215.27. Petitioner now contends that it is entitled to have the $22,215.27 amount disallowed, with the resulting increase in its excess profits credits. The claims for refund which the respondent has rejected were based on such disallowance. Opinion LEMIRE, Judge: Section 711(b)(1)(J), Internal Revenue Code, provides that in computing the excess profits net income for the base period years, for the purpose of determining the excess profits tax credit, "Deductions of any class shall not be allowed if deductions of such class were abnormal for the taxpayer." Section 711(b)(1)(K)(ii), Internal Revenue Code, provides, however, that the deductions referred to in section 711(b)(1)(J) shall not be disallowed "unless the taxpayer establishes that the abnormality * * * is not a consequence of a change at any time in the type, manner of operation, size, *130 or condition of the business engaged in by the taxpayer." The disallowance of the deduction in the base period year 1939 would, of course, result in an increase in petitioner's base period net income, and consequently an increase in excess profits credit for each of the taxable years involved. Respondent concedes that the loss on the sale of the Taylorsville plant was "abnormal" within the meaning of the statute but he contends that petitioner has not established, and cannot establish, that the loss was not a consequence of a change such as described in section 711(b)(1)(K)(ii). The statutory provisions here involved have been under consideration by this Court in a number of cases. [1] We have said that the test laid down by the statute is whether the abnormality, that is, the loss, resulted from, and was therefore a consequence of, a change such as described in the statute and not whether some change may have resulted from the abnormality. See R. C. Harvey Co., 5 T.C. 431; Wentworth Manufacturing Co., 6 T.C. 1201; Laredo Bridge Co., 7 T.C. 17. *131 The loss in question here resulted from the sale of one of petitioner's plants. There is a disagreement between the parties as to why the plant was sold, respondent contending that it was because it was losing money and petitioner contending that it was because A. B. Carter, petitioner's president and principal stockholder, was in bad health and did not want to be bothered with it. However, that may be, it is plain, we think, that the sale of the plant was not a consequence of a change "in the type, manner of operation, size, or condition of the business engaged in by the taxpayer." Up to the time of the sale there had been no such change in petitioner's business. Even granting that the discontinuance of the manufacture of 18 to 24 count yarns which the Taylorsville plant produced and the disposal of a considerable portion of its yarn making facilities constituted a change such as described in the statute, the respondent would not prevail unless the loss was a consequence of such change. The respondent undertakes to tie in the sale of the plant with petitioner's decision to curtail its yarn manufacturing and the expansion of its metal fabricating business. The evidence, we think, *132 is to the contrary. In the first place, the sale of the Taylorsville plant was an isolated transaction which A. B. Carter initiated without the advice or knowledge of petitioner's other executives and apparently against their wishes, for they tried immediately to repurchase the plant at a profit to the buyer. Furthermore, petitioner did not need the proceeds from the sale to expand its metal fabricating business. It had already made plans for such expansion and had ample funds available for that purpose. It did not contemplate going out of the yarn manufacturing business and, in fact, did not do so. The larger yarn plant at Lincolnton was continued in operation and later yielded large profits. The evidence before us is that the sale of the Taylorsville plant had no connection with any change of policy in petitioner's operations. We must conclude that while the sale which resulted in the loss in question may have been the cause of some of the changes specified in section 711(b)(1)(K)(ii) it was not the consequence of them, and that petitioner has met its burden of proof in this respect. Decision will be entered for the petitioner. Footnotes
1. William Leveen Corp., 3 T.C. 593; R. C. Harvey Co., 5 T.C. 431; Wentworth Manufacturing Co., 6 T.C. 1201; Laredo Bridge Co., 7 T.C. 17; Harris Hardwood Co., Inc., 8 T.C. 874; Carborundum Co., 12 T.C. 287↩.