THE LOCOMOTIVE FINISHED MATERIAL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52900. Filed November 4, 1955.

---

*A. Harding Paul, Esq.*, for the petitioner.
*Marvin E. Hagen, Esq.*, for the respondent.

**OPINION.**

TIETJENS, *Judge:* The controversy here arises out of respondent's rejection, wholly or partially, of petitioner's claim for refund of excess profits taxes for the years 1942 through 1945. The excess profits tax is laid upon the profits of the years 1940–1945, inclusive, in excess of the average profits of the base period years 1936–1939. In determining excess profits net income, section 711 (b) (1) (J) (ii) of the Internal Revenue Code of 1939 requires that adjustment be made for deductions in the base period that were abnormally large, thereby depressing the standard used to measure the amount of excess profits. The adjustment is made by eliminating the abnormal part of the deduction, which results in raising the average base period net income. The language of the statute requiring that adjustment be made for abnormal deductions, insofar as it concerns us here, is as follows:

(J) Abnormal Deductions.—Under regulations prescribed by the Commissioner, with the approval of the Secretary, for the determination, for the purposes of this subparagraph, of the classification of deductions—

\*    \*    \*    \*    \*    \*    \*

(ii) If the class of deductions was normal for the taxpayer, but the deductions of such class were in excess of 125 per centum of the average amount of deductions of such class for the four previous taxable years, they shall be disallowed in an amount equal to such excess.

One of the limitations on the disallowance of the above deductions provided by section 711 (b) (1) (K) (ii) is the following:

(K) Rules For Application Of Subparagraphs (H), (I), and (J).—For the purposes of subparagraphs (H), (I), and (J)—

\*    \*    \*    \*    \*    \*    \*

(ii) Deductions shall not be disallowed under such subparagraphs unless the taxpayer establishes that the abnormality or excess is not a consequence of an increase in the gross income of the taxpayer in its base period \* \* \*

None of the other limitations provided in section 711 (b) (1) (K) is in question here.

The abnormal deductions for which petitioner seeks to have adjustment made are the royalties it was required to pay to H. E. Muchnic in 1936 and 1937 on its sales of packing rings and springs. Respondent concedes that these payments were in excess of 125 per cent of the average amount of deductions of such class for the 4 previous taxable years, but contends that: (a) The royalty payments were not deductions within the meaning of section 711 (b) (1) (J), but were a part of cost of goods sold; and (b) assuming the royalty payments were "deductions" within the meaning of the statute, petitioner has failed to establish that the abnormality or excess of such deductions was not a consequence of an increase in petitioner's gross income in its base period. (Sec. 711 (b) (1) (K) (ii).)

We need not concern ourselves with the first contention for we think respondent is correct in the second, and that disposes of the controversy.

The statute imposes on petitioner the burden of establishing a negative fact, i. e., that the abnormality "is not a consequence of an increase in gross income." In previous cases we have commented on the difficulty of carrying this burden but have refrained from abating it by "softening construction," and have said that perhaps the best method of meeting the burden is by—

proving affirmatively that the abnormal deduction is a consequence of something other than the increase in gross income and that such proven cause is the converse or opposite of an increase in gross income and could not be identified with an increase in gross income.

*William Leveen Corporation,* 3 T. C. 593.

According to respondent, petitioner not only has failed to meet its burden of proof but also it affirmatively appears from the stipulated facts that the abnormality or excess of royalty payments in 1936 and 1937 was a consequence of an increase in petitioner's gross income in the base period. Petitioner, on the other hand, contends that it has met its statutory burden by showing that its increased royalty payments were a consequence of an increase in sales, not of gross income. The correlation of petitioner's sales, royalty payments, and gross income is obvious; the amount of royalty payments was directly dependent on the sales of packing rings and springs, and as sales increased there was an increase in petitioner's gross income. The stipulated facts clearly bear out this correlation. Petitioner's sales of packing rings and springs, royalties paid, and gross income in the period 1932–1939 were as follows:

| Year | Sales | Royalties | Gross income [1] |
|---|---|---|---|
| 1932 | $223,431.10 | $22,341.31 | $210,854.77 |
| 1933 | 225,071.50 | 22,507.15 | 252,470.81 |
| 1934 | 290,325.10 | 29,032.51 | 333,512.69 |
| 1935 | 338,080.90 | 33,808.09 | 437,757.78 |
| 1936 | 519,123.10 | 51,912.31 | 690,777.19 |
| 1937 | 522,412.70 | 52,241.27 | 798,458.96 |
| 1938 | 239,673.10 | 23,967.31 | 343,863.40 |
| 1939 | 341,033.20 | 34,103.32 | 398,037.41 |

[1] Includes income from sales of other products manufactured by petitioner in addition to income from sales of packing rings and springs.

We do not think petitioner has met the burden which the statute imposes. It is apparent that the royalty payments are a consequence of sales, as petitioner argues, but it is also apparent that the correlation of gross income to sales is so close that they appear to be inextricable, at least for the purpose of determining that the payments were not a consequence of an increase in gross income. Without sales there would be no royalty payments and from the stipulated facts it is incontrovertible that the sales also resulted in gross income. It certainly cannot be said here that by proving the royalty payments are a consequence of sales petitioner has also proved that "such proven cause is the converse or opposite of an increase in gross income and could not be identified with an increase in gross income."

We are of the opinion that petitioner has not established that the abnormality or excess amount of the royalty payments is not a consequence of an increase in its gross income, and the determination of the respondent is sustained on this point.

Because of concessions made by the parties decision will be entered under Rule 50.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

WITHEY, *J.*, dissenting: I dissent from the majority opinion in this case because I am not at all convinced that the opposite conclusion to that therein reached would do violence to the Congressional intent or over-all plan as evidenced by section 711 of the Internal Revenue Code of 1939 which would warrant and justify the rewriting of the clear and unambiguous language of section 711 (b) (1) (K) (ii) as the majority have in effect done. Application of the rule of construction which permits disregard of clear statutory language in order not to do violence to an obvious Congressional intent is not justified where under the literal interpretation of the statute it may be said to have an area of effect within the general plan of legislation. Such an area is obvious here, exemplified by situations arising under business leases where the rental is based upon a "floor" with an increase arising from an increase in gross income, where royalty payments are made regard-

less of the amount of sales but are fixed upon a basis of gross income only, no payment being made where, even though sales existed, there was a loss in gross income and, among other considerable and varied business situations, where bonuses are paid to company officials dependent solely upon an increase in gross income. It is obvious under the facts in the instant case that had there been an actual loss in gross income regardless of the amount of sales, which is a distinct possibility, the royalty payments would necessarily have been made.