THE CITY AUTO STAMPING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5783.    Promulgated July 11, 1946.

*LeRoy Eastman, Esq.*, and *L. T. Konopak, C. P. A.*, for the petitioner.

*Lawrence R. Bloomenthal, Esq.*, for the respondent.

## OPINION.

DISNEY, *Judge*: There is, as the respondent on brief states, no dispute about the essential facts presented to us here. The only issue is whether the respondent erred in disallowing as an abnormality, under the provisions of section 711 (b) (1) (H) of the Internal Revenue Code (providing for computation of excess profits tax income by disregarding certain deductions earlier taken), the above described deductions taken by the petitioner in 1937, a base period year. In that year the petitioner paid out, and deducted on its income tax returns, $48,-023.99 in settlement of the Dole Valve Co. suit and $22,560.42 upon two consolidated stockholders' suits. Petitioner's disallowance of these deductions, for the purpose of computing excess profits tax for 1941, was disallowed by the Commissioner.

It is the petitioner's position, in substance, that the payments were abnormal for it and, therefore, fall squarely under the language of section 711 (b) (1) (H), Internal Revenue Code,[1] providing for dis-

---

[1] SEC. 711. EXCESS PROFITS NET INCOME.

\* \* \* \* \* \* \*

(b) TAXABLE YEARS IN BASE PERIOD.—

(1) GENERAL RULE AND ADJUSTMENTS.—The excess profits net income for any taxable year subject to the Revenue Act of 1936 shall be the normal-tax net income, as defined in section 13 (a) of such Act; and for any other taxable year beginning after December 31, 1937, and before January 1, 1940, shall be the special-class net income, as defined in section 14 (a) of the applicable revenue law. In either case the following adjustments shall be made (for additional adjustments in case of certain reorganizations, see section 724 (e)) :

\* \* \* \* \* \* \*

(H) Payment of Judgments, and So Forth.—Deductions attributable to any claim, award, judgment, or decree against the taxpayer, or interest on any of the foregoing, if abnormal for the taxpayer, shall not be allowed, and if normal for the taxpayer, but in excess of 125 per centum of the average amount of such deductions in the four previous taxable years, shall be disallowed in an amount equal to such excess.

allowance, in computation of excess profits tax, of deductions taken in the base period and attributable to "any claim * * * judgment or interest on any of the foregoing" if abnormal for the taxpayer; while the respondent, though admitting the applicability of subsection (b) (1) (H), relies upon its further language to the effect that if the deductions were normal for the taxpayer, only the excess over 125 per cent of the average amount of such deductions in the base period years may be disallowed; and he contends first that the deductions here were normal. Since the amounts deducted in 1937 were less than the "average of such deductions" in the four previous years, he therefore allows no disallowance of the deductions. The fact that the deductions in 1937 were less than the four-year average is not disputed by the petitioner, and arises from the fact that in 1933 the petitioner expended $299,529.33 in payment of a judgment in favor of the State Superintendent of Banking. The petitioner contends, however, that the fact that the four-year average of claims or judgments exceeds the amounts deducted in 1937 is immaterial, for that provision applies only if such deductions are normal, to which the respondent answers that Regulations 109, as amended, section 30.711 (b)–2, provides that:

A class of deductions is abnormal only if the taxpayer had no deductions of that class in the taxable years prescribed for determining average deductions.

and that since in 1933 the petitioner paid the $299,529.33 on another judgment, a deduction of the same class as those in 1937, the latter are under the regulation not abnormal. To this the petitioner proffers the challenge that the part of the regulation relied on is invalid, as an attempt to read into the statute something not placed there by Congress, unreasonable, arbitrary, inconsistent with the statute, and invalid as applied to it.

The gist of this matter is that the petitioner had another deduction, in a previous year, of the same nature or class as those in 1937 here in issue, and that the respondent, under the regulation, contends that such fact renders those in 1937 normal, while the petitioner urges that to a manufacturing corporation payment of such judgment or claims is in its nature abnormal, and that a regulation can not validly cause it to be considered otherwise.

We agree with the petitioner on this point. It is a manufacturing corporation, plainly not one where claims, litigation, and judgments might be considered usual incidents to its business. See *W. H. Loomis Talc Corporation*, 3 T. C. 1067; *Consolidated Motor Lines, Inc.*, 6 T. C. 1066. We consider this so self-evident as to obviate further comment, and that the only question is whether the regulation, in effect denying abnormality of deduction unless there is none of that class in the period used to secure an average, is valid as applied in this case. We do not think it is. The statute gives the petitioner the benefit of the 1937 deductions "if abnormal for the taxpayer." **The**

words "for the taxpayer" are to us highly significant. They call for an examination of the facts as to each particular petitioner. The deduction might not be abnormal for some other petitioner. It might not conform to some generality (such as the regulation). But if abnormal for the petitioner here, it may not be viewed otherwise. Moreover, logic forbids a conclusion that the fact that there are two abnormalities causes both to become normal. They may become so in a sense by comparison with each other, but may be still very abnormal by comparison with the business experience of petitioner. The statute not only does not limit the inquiry to the four-year period, but noticeably does not state that a deduction must be the only one of its class in order to be abnormal. Definition of "abnormal" is "not conformed to rule or system; deviating from the type; anomalous; irregular"—Webster's New International Dictionary. Two deviations from type do not cause normality in both. The Report of the Senate Committee on Finance on the Second Revenue Act of 1940, on this subject, says "an additional adjustment is provided * * * to the effect that deduction attributable to any claim, award, judgment, or decree * * * will not be required to be taken into account if, in the light of the taxpayer's business, it is abnormal for the taxpayer to incur a liability of such character * * *." The same language is found in the Conference Committee Report (see pp. 537 and 551, C. B. 1940–2) and in the earlier statute, as more particularly noted below. The committee reports do not explain the change in language, from which it appears that no such change in meaning was made as to call for explanation. We therefore regard "if abnormal for the taxpayer" in subsection (H) as equivalent to "if in the light of taxpayer's business it was abnormal [etc.]." So viewed, the language does not permit the limitation contained in the regulation.

The regulation above referred to attempts to classify deductions as to abnormality. Section 711 (b) (1) (H) contains no language as to a "class" of deductions, but, as above seen, merely provides for disallowance of deductions abnormal for the taxpayer. Therefore, the regulation appears not well based upon or applicable to section 711 (b) (1) (H), however well based it might be on subsection (J), which does cover class of deductions. "Where a payment falls within a particular provision of the law, the payment may not be claimed under another and, possibly, broader provision." *W. H. Loomis Talc Corporation, supra.* So a regulation, even though properly based on subsection (J), does not necessarily have proper basis in subsection (H).[2] Subparagraph (J) was inserted in the law in 1941, though subsection (H), above considered, appeared as subsection (G) in the

<hr />

[2] On brief the respondent urges, in distinguishing *Green Bay Lumber Co.*, 3 T. C. 824, that subsections (J) and (H) are contrasted in purpose and intent, and that the Ways and Means Committee regarded (J) "as an entirely separate adjustment in addition to the specific items set forth in the preceding subdivision of section 711 (b) (1)."

Second Revenue Act of 1940. There the expression was "if in the light of the taxpayer's business it was abnormal for the taxpayer to incur a liability of such character," instead of merely "if abnormal for the taxpayer," as in the 1941 amendment. The regulation here discussed did not appear until 1941, when, "to conform to the Excess Profits Tax Amendments of 1941," it was added by T. D. 5045 (C. B. 1941–1, p. 69, 73). Thus it is seen that subsection (H) (as (G)) not only provided in substance the present law as to abnormalities prior to enactment of subsection (J), referring to classes, or promulgation of any regulation in that respect, but also that the old subsection (G) specifically refers to "in the light of the taxpayer's business."

Moreover, in our opinion, the regulation (so far as here concerned and applied) is arbitrary, and unreasonable, and not within the statute. *Morrill v. Jones,* 106 U. S. 466; *International Railway Co. v. Davidson, Collector,* 257 U. S. 506, are examples of many cases forbidding regulations of that character. In *Green Bay Lumber Co.,* 3 T. C. 824, 829, although discussing classification of bad debts and holding them not all to be of the same class, we quoted *Truax v. Corrigan,* 257 U. S. 312, to the effect that classification "must regard real resemblances and real differences between things and persons and class them in accordance with their pertinence to the purpose at hand." So here we think that real differences and real resemblances must be regarded in determining what is normal or abnormal, and that a regulation may not validly determine that a lawsuit is normal merely because another like it happened within the preceding four years, and without examining the facts as to what, in the petitioner's business, is normal. We hold that the part of the regulation here involved is invalid as applied here by the respondent, and that the deductions because of the litigation in 1937 were abnormal for the petitioner, a manufacturer, within the meaning of section 711 (b) (1) (H), Internal Revenue Code.

It remains to be considered, however, whether the petitioner, under the burden imposed by section 711 (b) (1) (K) (ii) of the Internal Revenue Code,[3] has shown that the abnormality was "not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by the taxpayer." (Since it was stipulated that "Said deductions were not a consequence of an increase in gross income of petitioner in its base period or a decrease in the amount of some other deduction in its base period," we are not

---

[3] SEC. 711. [(b) (1) has been heretofore set forth in the margin.]

(K) Rules for Application of Subparagraphs (H), (I), and (J).—For the purposes of subparagraphs (H), (I), and (J)—

\* \* \* \* \* \* \*

(ii) Deductions shall not be disallowed under such subparagraphs unless the taxpayer establishes that the abnormality or excess is not a consequence of an increase in the gross income of the taxpayer in its base period or a decrease in the amount of some other deduction in its base period, and is not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by the taxpayer.

concerned here with the other elements of section 711 (b) (1) (K) (ii) ; also, since it is stipulated that the petitioner had no other suits, claims, awards, or decree similar to those above described, or claimed any deduction in connection with other suits, awards, etc., section 711 (b) (1) (K) (iii) does not apply; likewise, since petitioner was in business during the four years prior to 1941, section 711 (b) (1) (K) (i) is not here involved.)

We need not examine as to change in financial condition, since it is also agreed that the deductions were not the result of change in financial condition of the business. Our inquiry, therefore, is as to change in other conditions, type, manner of operation, or size. In *William Leveen Corporation*, 3 T. C. 593, we noted that such facts were "crucial though negative," that establishment may be difficult, that manner of its accomplishment can not be formulated in a rule, and that "perhaps the proof is best made by proving affirmatively that the abnormal deduction is a consequence of something other than" (the increase in gross income in that case). The petitioner in this case therefore contends that it devoted effort to show, and did show, that the deduction was consequence of something else than change in type, condition, etc., here of interest; also that it showed all changes made, and that none affected the deductions involved. After detailed examination of the evidence adduced, we have concluded that the petitioner's burden has been met. It is unnecessary to repeat the facts already recited above. Suffice it to say that in our opinion the petitioner has demonstrated that the deductions were the result of litigation over a contract involving imperfections and faults in patent rights applications, also litigation instituted by stockholders through dissatisfaction over the handling of the patent matters and the litigation incident thereto, caused by lack of knowledge as to improper conduct alleged against directors; also, that no change in type, manner of operation, size, or other condition of the business caused such litigation and the payments which it entailed. It is shown that the petitioner's business was that of manufacturing on order of customers, that there was, in connection with the Dole Valve matters, no increase in floor plan, no change in personnel, no change in equipment, except incidental to such as fixtures and jigs in assemblies and nothing in the way of expense other than routine matters. Glass had not been earlier used, but its use in the manufacture entailed no essential change, since it was purchased cut to size and specification, and no more than minor change in equipment was necessary. Other manufacturing under patent licenses was done. We consider it plain that the litigation with Dole Valve Co., and therefore the expense thereof, was a consequence, not of the elements of change in type, condition, size, or manner of operation of business, as stated in the statute, but of disagreement over the patent matters, in-

volving questions as to their validity. We are unable to discern wherein the litigation was a consequence of the changes named in the statute, for we find no such changes of any note, and further find such minor matters to have no casual connection with the litigation over the patent matters. Petitioner's business had not been changed to go into manufacturing under patents. The litigation with stockholders has the same ultimate basis as that with Dole Valve Co., since it arose therefrom and from matters connected with the usual business of the petitioner. We conclude that the petitioner has met the burden under subsection (K) (ii).

Reviewed by the Court.

*Decision will be entered under Rule 50.*