OPINION. Leech, Judge: The first issue submitted is whether, in computing petitioner’s excess profits net income for 1938, it is entitled to an adjustment because of its stipulated loss on its shipment of beef to the United States Government in Manila during that year, under section 711 (b) (1) (J) (i) of the Internal Revenue Code.[1] Petitioner has abandoned any claim that the loss was abnormal in amount under section 711 (b) (1) (J) (ii). The respondent takes two positions. The first is that, since his regulations have always treated cost of goods sold as a deduction, not from gross income to arrive at net income, but from gross sales to determine gross income, the loss involved here is not within the meaning of the term “deductions” as that term is used in the statute, because petitioner treated it as cost of goods sold. From such premise, the respondent argues that to allow the claimed adjustment, it would be necessary to hold that the established statutory concept of the term “deductions” has been broadened by section 711 (b) to include subtractions from gross sales. The second contention of the respondent is that, in any event, the deduction does not qualify as abnormal in class for petitioner. We pass the question raised in the first position and decide the issue by affirming respondent in his second contention. In arguing his second position, respondent relies on the rationale of Arrow-Hart & Hegeman Electric Co., 7 T. C. 1350, and Oaklawn Jockey Club, 8 T. C. 1128. Petitioner, on the other hand, argues that the loss was abnormal in class, and in support of its position relies upon Green Bay Lumber Co., 3 T. C. 824. The first two cited cases dealt with “interest” deductions. It was decided that although the interest was paid for different purposes, the deductions were not different in class. In the Green Bay case, it was held that a bad debt arising out of loans made by the taxpayer to employees to purchase stock in another corporation was of a different class from bad debts arising from trade accounts. The statute grants a deduction for any class if abnormal to the taxpayer. Abnormality in class depends upon the facts in each case. City Auto Stamping Go., 7 T. C. 354, 360. Petitioner was engaged in processing and purchasing from other processors meats for sale to various customers, one of whom was the United States- Government. The record establishes that, although petitioner had not previously experienced a loss as a result of the rejection of an entire shipment of meat, it was required from time to time to make price adjustments “for many, many reasons,” including its products being damaged or spoiled in transit and as a result of shrinkage in weight. It is true these adjustments were small as compared to the respective shipments in connection with which they occurred. But we see no logical difference in character between such minor losses normally experienced by petitioner and the loss sustained because an entire shipment of meat was rejected, as here, and then sold by petitioner as its property at less than its cost. They have.common characteristics and differ only in degree. As one of the witnesses for petitioner testified in denying the comparability of the loss involved here to these smaller losses: “No, in any of these other minor instances that I spoke of the loss amounted to about, just a part of 1 per cent, whereas this was about 66%rds per cent.” Petitioner apparently considered the normal losses and the loss sustained on the sale of the rejected meat as of the same class although the detail was more complicated, since the effect of its book entries reflecting all of them was the same. While book entries are not decisive, they are of evidentiary value, as showing how petitioner regarded the transaction' at the time. United States v. Pure Oil Co., 135 Fed. (2d) 578; Rio Chande Oil Co. v. Welch, 101 Fed. (2d) 454. Petitioner contends that, since this is the first time in its experience that a processor, from whom it purchased meat, breached its warranty to-furnish meat complying with contract specifications, the transaction is abnormal in character as to it. We, however, do not think such argument is available to petitioner under the circumstances here. Until a transaction is closed and completed, the loss is not sustained. United States v. White Dental Mfg. Co., 274 U. S. 398. The only closed and completed transaction taking place in 1938 respecting the rejected meat was its sale as petitioner’s meat at less than cost. Petitioner so treated the transaction on its books and in its income tax returns. Moreover, it stipulated here that the loss occurred in 1938. And when recovery from Cudahy occurred in 1940, the amount of that recovery was reported in income for that year. Had the petitioner regarded the transaction as giving rise to a valid claim for breach of warranty against a solvent processor, we think no loss was sustained in 1938. Lee Mercantile Co. v. Commissioner, 79 Fed. (2d) 391. Cf. Lewellyn v. Electric Reduction Co., 275 U. S. 243. In fact, it is not apparent that any loss on this ground ever resulted, since petitioner recouped from Cudahy in 1940. We refer to this phase of the matter only for the purpose of demonstrating the unavailability of such argument to petitioner. Our determination must be premised on the facts as stipulated. We conclude the loss in question was not abnormal to petitioner, under section 711 (b) (1) (J) (i) of the code, and sustain the respondent on this issue. We are not, therefore, required to determine whether petitioner has-established the negative factors set forth in section 711 (b) (1) (K) (ii). The second issue relates to the propriety of the respondent’s dis-allowance of a deduction of the sum of $3,107.95 in the taxable year which petitioner contends constituted expenditures made on its City Branch Building in the nature of repairs. We have set forth in our findings the material facts bearing on the phases of work done on the building, as fully as possible from the confused state of this record. It would serve no purpose to discuss them again. We find it impossible, on this record, to segregate the respective items between those which can be properly characterized as repairs and those constituting improvements of a permanent character, and capital in nature. Accordingly, we hold that petitioner has failed to establish error in respondent’s determination that only $1,000 of the amount claimed constituted expenditures in the nature of repairs. On the final issue as to the Arizona state sales taxes, the respondent, on brief, concedes that petitioner is entitled, in the taxable year, to a deduction in the sum of $12,547.56. Petitioner, in its reply brief, accepts such amount as being correct. Effect will be given to these respective concessions in the computation under Bule 50. Beviewed by the Court. Decision will be entered under Rule 50. [1] SEC. 711. EXCESS PROFITS NET INCOME. ******* (b) Taxable Years in Base Period.— (I) General rule and adjustments. — The excess-profits net income for any taxable year subject to the Revenue Act of 1936 shall be the normal-tax net income, as defined in section 13 (a) of such Act; and for any other taxable year beginning after December 31, 1937, and before January 1, 1940, shall be the special-class net Income, as defined in section 14 (a) of the applicable revenue law. In either case the following adjustments shall be made (for additional adjustments in case of certain reorganizations, see section 742 (e)) : ******* (J) Abnormal Deductions. — Under regulations prescribed by the Commissioner, with the approval of the Secretary, for the determination, for the purposes of this subparagraph of the classification of deductions— (i) Deductions of any class shall not be allowed if deductions of such class were abnormal for the taxpayer, * * *