FRANK H. FLEER CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9963.    Promulgated January 30, 1948.

*Charles S. Jacobs, Esq.*, for the petitioner.
*Karl W. Windhorst, Esq.*, for the respondent.

## OPINION.

Murdock, *Judge*: The petitioner first contends that excise taxes which it paid during the base years 1936, 1937, and 1938 were abnormal in class within the meaning of section 711 (b) (1) (J) (i) of the Internal Revenue Code and should be disallowed as deductions for those years in computing its excess profits credit. The provision in question is a remedial one, which should be construed reasonably to give the relief intended. *Green Bay Lumber Co.*, 3 T. C. 824, 830. The petitioner paid excise taxes during the years 1932 through 1938, but apparently paid no other taxes of that type at any time up to 1942. It would get no benefit under section 711 (b) (1) (J) (ii) because the deduction for excise taxes in each of the years 1936, 1937, and 1938 was not in excess of 125 per cent of similar deductions during the four years preceding each of those years. The petitioner, obviously aware of this, makes its claim under section 711 (b) (1) (J) (i).

The petitioner argues that the purpose of section 711 (b) (1) (J) was to permit a taxpayer computing its excess profits credit on the

income method to eliminate all unusual deductions of the base period years so that the average income of those years might be used to measure the normal income of the excess profits tax years, computed on a comparable basis, to the end that only true excess profits would be subject to tax. The petitioner paid no excise taxes during the excess profits tax years and the petitioner's argument is logical. However, Congress has not provided that every deduction of a base year which does not have a counterpart in the excess profits tax year shall be disallowed. It has provided that, under regulations for the determination of the classification of deductions, "deductions of any class shall not be allowed if deductions of such class were abnormal for the taxpayer." Regulations 112, section 35.711 (b)–2 is directly opposed to the petitioner's contention, since it provides, *inter alia*, that a class of deductions is abnormal only if the taxpayer had no deductions of that class in the four preceding taxable years, whereas the petitioner had deductions in each of the four preceding years. The provision of the regulations just referred to has been held invalid as applied to section 711 (b) (1) (H). *City Auto Stamping Co.*, 7 T. C. 354.

The regulations contain no other aid to the solution of the present problem. There is nothing in the record to show that these deductions for excise taxes were of a class abnormal for the petitioner except that such taxes were imposed upon the petitioner only during the seven years 1932 through 1938. The Court has not been told how they relate to or are unlike other taxes paid by the petitioner. Congress, in its efforts to collect sufficient revenues, imposes various kinds of taxes. It has imposed excise taxes from time to time on manufactured articles, and one can not fairly say that the payment of such taxes by a manufacturer of chewing gum was extraordinary, unusual, or something which it might not reasonably expect in the normal operation of its business.[1] The circumstance that the Government abandoned that tax and used other methods to collect revenues in the tax years does not necessarily make the excise tax of the base years abnormal. The finding that the deductions for excise taxes were not of a class abnormal to the petitioner disposes of this issue without the necessity of discussing other limiting provisions.

The petitioner next claims that the deduction for the worthless debt due from the Alexander Corporation also gave rise to an abnormality under section 711 (b) (1) (J) (i). The respondent argues that that deduction should be classified with other deductions for bad debts. The petitioner points out, however, that the other deductions arose from the ordinary operation of its business on accounts due it from customers who bought its product and then failed to pay, whereas

---

[1] There was a similar tax in effect from 1917 through 1921.

this bad debt arose in quite a different way from money advanced to one who was not a customer and who was not being paid thereby for furnishing goods to the petitioner. This difference justifies a separate classification of these deductions. *Green Bay Lumber Co., supra.* The evidence fairly preponderates in favor of the petitioner's contention that a deduction of this kind was abnormal for the petitioner. The record shows that it made advances to others from whom it bought goods, but in all of those cases the advances were against goods ordered, whereas in the present case the advances had no connection with goods ordered, but were made for some purpose not directly connected with the business of the petitioner or necessary, normal, or usual in that business.

The petitioner's final contention is that an abnormality in amount under section 711 (b) (1) (J) (ii) existed for the base years 1937, 1938, and 1939 with respect to what it describes to the Court as sales promotion expenses. It seeks to have those expenditures classified separately from others of its sales expenses. Its sales manager testified that all of the items to which it refers completely and exclusively represent sales promotion expenses incurred primarily to develop markets for future sales, to advance the relative position of the company in the field, and to increase demand for the products of the company, whereas other sales expenses were incurred directly in connection with actual sales. The witness described in varying degrees of completeness the type of use made of some of the expenditures recorded in a number, but not all, of the accounts in question. Some of the accounts are inadequately described and others are described only by name. Many of the expenditures listed in the accounts in question undoubtedly had a two-fold purpose and effect, to wit, to bring about current sales and to promote future sales. Although it may be true, as the sales manager testified, that the expenditures were made primarily to develop future sales, nevertheless, a number of them had a direct tie-in with current sales, and almost every one, if not every one, of them might have stimulated current sales. For example, awards of premiums and bonuses were based upon current sales. While sales promotion expenses might be separately classified from direct sales expenses for bookkeeping purposes, the first question under this issue is whether they should be separately classified for the purpose of section 711 (b) (1) (J) (ii). That question, of course, is one for the Court rather than the sales manager.

Congress, endeavoring to impose the excess profits tax upon that part only of the income of the excess profits tax years which exceeded the normal income of the taxpayer, used the average of the base period years as the norm. It recognized that an individual taxpayer might have had some deduction during that period which would be abnormal in class or abnormal in amount and thus prevent the net income of

that year from representing true normal. So Congress provided in section 711 (b) (1) (J) for the elimination of such deductions to the extent that they were abnormal, yet, at the same time limiting this benefit in various ways. For example, it wanted to make sure that what would otherwise appear to be abnormal was not large merely because of a diminution of some other deduction or because of an increase in gross income and was not due to a change in size or manner of operation of the business. Sec. 711 (b) (1) (K) (ii). It also limited it by comparisons with similar deductions in the tax years. Sec. 711 (b) (1) (K) (iii). The Court, in applying section 711 (b) (1) (J) and (K) should, therefore, have a sufficiently comprehensive view of the activities of the taxpayer to make sure that the purpose of Congress will be carried out.

The Court is asked to look at this group of items alone and to decide that they constitute a separate class for the purpose of section 711 (b) (1) (J) (ii); the abnormality in their amount, which would then appear mathematically, was not a consequence of an increase in the gross income or a decrease in the amount of some other deduction of the taxpayer in the base period, and was not a consequence of a change at any time in the manner of operation or size of the business engaged in by the taxpayer; and, finally, the extent to which those abnormalities exceeded similar deductions for the taxable years. The evidence does not justify a finding that the so-called sales promotion expenses should be classified separately from other expenses for the purpose of section 711 (b) (1) (J) (ii) and indicates that perhaps no additional evidence could be offered which would justify the classification sought. All of the expenditures during the base years which were connected with selling were made to sell the petitioner's product. The purpose of each was closely related to that of every other one. Cf. *Frank Shepard Co.*, 9 T. C. 913. It appears that almost all, if not all, of them tended to stimulate current sales. It does not appear that the effect which they had upon future sales endured beyond the year in which they were made. Sales expenses, even sales promotion expenses, which did not have an effect upon sales beyond the year in which made, but only tended to affect sales of that year, would not be abnormal within the intendment of Congress. To eliminate them would defeat rather than advance the purpose which Congress had in mind when it imposed the excess profits tax and allowed the benefits of section 711 (b) (1) (J) (i). It would be impossible on the present record, even if appropriate, to allocate the expenditures between current and future sales in proportion to the effect which they had upon each. In short, the relationship between the expenditures in question and other selling expenses is so intimate as to preclude a separate classification for present purposes.

It might be helpful to know what other expenditures the petitioner

made during the base and tax years in its efforts to sell its products. The petitioner has made no effort to present evidence on that point. That situation is the petitioner's own fault. However, it appears that the petitioner paid its salesmen commissions, it undoubtedly had other direct selling expenses in the base years, as well as the tax years, and, as has been said above, some of the so-called direct selling expenses and some, or all, of the so-called sales promotion expenses of this taxpayer are too closely related to be separately classified for the purpose of section 711 (b) (1) (J). This is a complete answer to this contention of the petitioner, because it does not claim any benefit except in case the items which it has referred to as sales promotion expenses can be classified separately from other sales expenses. The Court is also unable to hold on the present record that the limitations of (K) (ii) and (iii) do not apply to deny any benefits which would otherwise be available.

Reviewed by the Court.

*Decision will be entered under Rule 50.*