LORENZ CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11093. Promulgated February 28, 1949.

*Rollin P. Rodolph, C. P. A.*, for the petitioner.
*Leonard A. Marcussen, Esq.*, for the respondent.

OPINION.

JOHNSON, *Judge*: Petitioner charges respondent with error in computing its base period net income to reflect a full deduction of $19,-688.84 for bad debts in 1937. It contends primarily that the deduction was abnormal in amount, exceeding 125 per cent of average bad debt deductions for the preceding four years by $11,487.41, and suggests rather than argues that $12,373.19 of the deduction, representing the bad debt due from Lorenz, was abnormal in class. The determination of petitioner's average base period net income requires a computation of its excess profits net income for each year of the base period, section 713 (e), Internal Revenue Code. By section 711 (b) (1) the excess profits net income is defined as the normal tax net income, altered by specified adjustments. Among these adjustments is the elimination of abnormal deductions, subsection (J) providing that:

(i) Deductions of any class shall not be allowed if deductions of such class were abnormal for the taxpayer, and

(ii) If the class of deductions was normal for the taxpayer, but the deductions of such class were in excess of 125 per centum of the average amount of deductions of such class for the four previous taxable years, they shall be disallowed in an amount equal to such excess.

The parties are agreed that the bad debt deduction was mathematically abnormal in amount, but respondent defends his determination first on the ground that petitioner has failed to meet the requirements of section 711 (b) (1) (K), which provides in part that:

(ii) Deductions shall not be disallowed under such subparagraphs unless the taxpayer establishes that the abnormality or excess is not a consequence of an increase in the gross income of the taxpayer in its base period or. a decrease in the amount of some other deduction in its base period, and is not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by the taxpayer.

It is settled that a taxpayer must sustain the burden of proving that the abnormality is not a consequence of any listed condition to be entitled to the adjustment which petitioner here seeks. *E. B. & A. C. Whiting Co.*, 10 T. C. 102; *R. C. Harvey Co.*, 5 T. C. 431; *William Leveen Corporation*, 3 T. C. 593. And respondent asserts that the evidence fails to establish that the abnormal bad debts of 1937 were not

a consequence of an increase in gross income or a change in the type, manner of operation, size, or condition of the business.

We are unable to agree that this is so. As for the increase in gross income, the facts show that, while gross income rose from $186,109.63 in 1936 to $235,845.80 in 1937, bad debts increased from $4,681.17 to $19,688.84 in the respective years, fell to $2,901.61 in 1938, when gross income was $212,611.25, and were $11,680.40 in 1934, when gross income was only $107,854.17. There was hence no significant relation between the volume of gross income and the aggregate of bad debts, and no inference adverse to petitioner can be properly drawn from the suggested comparison. *O. Hommel Co.*, 8 T. C. 383. But, as this Court has had occasion to remark, the most satisfactory and conclusive proof that an abnormal deduction is not a consequence of the listed conditions is affirmative evidence that it was the consequence of something else, *City Auto Stamping Co.*, 7 T. C. 354; *William Leveen Corporation, supra.* The evidence here indicates conclusively that the abnormality in the amount of bad debts deducted in 1937 resulted from the charging off of Lorenz' special account as uncollectible. If that item be eliminated, petitioner's bad debts due on other customers' accounts aggregated only $7,315.65, which is within 125 per cent of its average deduction of $6,551.14 for the four preceding years. As no part of Lorenz' very large account had ever been charged off before, its deduction obviously caused the abnormality, cf. *O. Hommel Co., supra*, which was not, therefore, the consequence of increased gross income, for Lorenz' purchases declined sharply in 1937. Cf. *Harris Hardwood Co.*, 8 T. C. 874.

Implicitly assuming that the abnormality did result from deduction of Lorenz' indebtedness, respondent next argues that this indebtedness originated in Lorenz' purchase of the contracting business from petitioner in 1929, and as petitioner's sale caused a change "in the type, manner of operation, size, or condition of the business," the eventual worthlessness of the debt and the deduction thereof were a consequence of that change, or, at least, petitioner has not met its burden of proving that they were not. Taking note that after May 15, 1929, Lorenz purchased large quantities of materials and supplies from petitioner which were charged to his general account in an aggregate amount of $266,681.01, that he made aggregate payments of $281,785.06, and that the payment excess of $15,104.05, plus the debt of $12,373.19, deducted in 1937, equals $27,477.24 or just a dollar less than the charges to May 15, 1929, respondent would have us infer that the debt deducted in 1937 originated in petitioner's sale of the contracting business, and not in Lorenz' later debts for materials and supplies or for advances

made by petitioner to forestall Lorenz' bankruptcy. He fortifies this contention by urging that payments were applied to the current purchases, and hence the oldest debt, being that for sale of the business, was never paid in full, but remained to be charged off; therefore, the 1937 deduction is a consequence of that sale, which worked a change in petitioner's business.

We are unable to accept the factual premise on which this argument rests. While the parties stipulated that petitioner "sold" the contracting business in 1929, Lorenz and petitioner's accountant testified that the $27,478.24 debit balance in Lorenz' account on May 15, 1929, was not consideration for the going business, good will, or accounts receivable disposed of, but represented simply an accumulation of numerous detailed charges for items of used equipment, such as trucks, tools, and machines, and for materials which Lorenz required in performing contracts. The account sheet, introduced in evidence, indicates that the balance was composed of numerous items, that charges aggregating $107,363.53, for materials sold to Lorenz after May 15, 1929, were entered in the account in the same manner as items previously charged, and that Lorenz' payments of $108,635.11 were credited to it during the year. Under such circumstances it is immaterial whether or not the early entries of $27,478.24 should be deemed the selling price of the business. It is settled that payments on an open account should be applied to the earliest charges in the absence of any specific action or understanding between the parties to the contrary. *Delaware Dredging Co.* v. *Tucker Stevedoring Co.* (C. C. A., 3d Cir.), 25 Fed. (2d) 44; *Bacon* v. *Dollar S. S. Lines* (E. Dist. N. Y.), 290 Fed. 964. Petitioner and Lorenz had no understanding, and hence Lorenz' payments in 1929 must be deemed to have satisfied all charges prior to May 15.

It can not be said, therefore, that any part of the only amount which respondent suggests was connected with petitioner's change in business remained unpaid in 1937, or even in 1930. The $12,373.19 written off as worthless in 1937 must represent uncollected charges for sales of materials and petitioner then had no debt consequent upon the change in business such as the accounts receivable involved in *Pacific Gas & Electric Co.*, 7 T. C. 1142. We hold, therefore, that petitioner's abnormal bad debt deduction of 1937 was "not a consequence of a change at any time in the type, manner of operation, size or condition of the business" within the meaning of section 711 (b) (1) (K) (ii), but was a consequence of petitioner's overextension of credit to a customer.

In the concluding paragraph of his brief respondent cites Regula-

tions 112, sec. 35.711 (b)–2 (b), which requires a taxpayer, claiming a disallowance under section 701 (b) (1) (J) of the code to submit a full statement in support of the claim. Alleging that petitioner failed to do so, he states that the Court must sustain the determination because petitioner did not comply with the regulation. This allegation is not supported by any evidence, and, as the noncompliance is not set forth in either the deficiency notice or the pleadings as a ground for the determination, we shall not consider it. *Wentworth Manufacturing Co.*, 6 T. C. 1201, and cases therein cited.

The Commissioner's determination is reversed.

Reviewed by the Court.

*Decision will be entered under Rule 50.*