Southwest Pump Company v. Commissioner.
Southwest Pump Co. v. Commissioner
Docket No. 22647.
United States Tax Court
1950 Tax Ct. Memo LEXIS 132; 9 T.C.M. (CCH) 643; T.C.M. (RIA) 50186; August 2, 1950
*132 Philip I. Palmer, Esq., Republic Bank Bldg., Dallas, Tex., for the petitioner. John W. Alexander, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The respondent determined the following deficiencies in income, declared value excess-profits tax and excess profits tax of petitioner: Declared
Value
Excess-
Income
Profits
Excess
Year
Tax
Tax
Profits Tax
Total
1942
$460.07
$ 460.07
1943
$ 862.56
862.56
1944
93.89
93.89
1945
$78.67
1,647.67
1,726.34
The sole issue is whether the respondent properly determined that the petitioner has not established that certain claimed expenditures for advertising and traveling in the years 1936 and 1937 were abnormal within the meaning of section 711(b)(1)(J) as limited by section 711(b)(1)(K) of the Internal Revenue Code. Findings of Fact Petitioner was incorporated in September, 1920, and for all years material to this proceeding carried on in general the business of manufacturing and selling service station gasoline pumps and parts. Its plant and principal office are located at Bonham, Texas, *133 and it filed its returns with the collector of internal revenue for the second district of Texas. Prior to 1935 petitioner manufactured gasoline pumps which were sold for use in service stations. The pump sold in the beginning was manually operated, while those sold for several years before 1935 were electrically operated and had a meter with a hand on it like a clock, which showed the total number of gallons pumpted but did not compute the cost. In 1932 the Wayne Pump Company of Fort Wayne, Indiana, secured a patent on a computing mechanism for gasoline pumps which registered the number of gallons pumped and at the same time computed the cost of the gasoline at the price quoted. While the Wayne Pump Company owned the patent, the sole manufacturer of the mechanism was the Vetter Roof Company, which did the manufacturing with the permission of the Wayne Pump Company. During the years 1932 to 1935 Wayne Pump Company permitted only two pump manufacturers, Gilbert and Barker, a subsidiary of Standard Oil of New Jersey, and the Tokheim Oil Tank and Pump Company, to use the computer in their pumps. In 1935 the Wayne Pump Company gave the petitioner and all other gasoline pump manufacturers *134 a license to use the computer, but it was necessary for the petitioner and the other manufacturers to buy the computer from the Vetter Roof Company, the sole manufacturer, and to pay the Wayne Pump Company a license fee. The computer was such an outstanding improvement in gasoline pumps that pumps not possessing this mechanism quickly became obsolete. In the year 1935 petitioner's competitors were advertising to the trade in national magazines that they were manufacturing pumps which contained the computer and, in order to meet this competition, petitioner engaged in similar advertising as soon as it acquired the license to use the computer. As a result its expenditures for advertising in 1936 and 1937 substantially exceeded advertising expenditures of prior years. In order to meet competition and to acquaint prospective purchasers with the fact that its pumps contained the computer, it became necessary for the petitioner to employ additional salesmen in 1935 and subsequent years. Its competitors started the practice in 1935 of mounting a pump on a trailer which a salesman would attach to his automobile. This permitted the salesman to demonstrate the pump and computing mechanism *135 to prospective customers. Petitioner adopted this method of demonstrating its pump for the first time in 1936 and put quite a few trailers on the road. No part of the cost of the trailers or the pumps mounted thereon was included by petitioner in the amounts paid its salesmen for travel expenses. In the years 1936 to 1939, inclusive, these amounts showed increases over those of prior years. In the years 1932 to 1939 the petitioner had gross income, capital stock, total assets and net income in the amounts shown hereunder: Year
Gross Income
Capital Stock
Total Assets
Net Income
1932
$ 70,042.74
$ 50,000.00
$191,906.83
$25,225.11
1933
14,817.67
50,000.00
173,840.63
(16,401.87)
1934
25,942.75
50,000.00
169,776.59
( 9,554.49)
1935
56,496.80
50,000.00
175,515.33
1,058.03
1936
129,443.65
100,000.00
242,085.26
52,671.53
1937
184,476.61
150,000.00
283,019.44
50,492.29
1938
134,108.34
150,000.00
439,150.65
24,407.96
1939
201,665.99
150,000.00
399,754.31
26,113.00
In the year 1936, when petitioner increased its capital stock from $50,000 to $100,000, it declared and paid a dividend of $57,500, and in the year 1937, when *136 its capital stock was increased from $100,000 to $150,000, it declared and paid a dividend of $58,000. For the years 1932 to 1941, inclusive, the petitioner deducted the amounts shown hereunder for advertising and traveling expenses: Year
Advertising
Traveling
1932
$ 951.95
$ 2,368.49
1933
917.10
1,656.11
1934
622.88
2,584.05
1935
2,550.80
1,698.87
1936
7,836.17
4,852.21
1937
12,172.72
8,760.36
1938
5,666.45
9,389.41
1939
5,428.46
11,839.37
1940
10,394.59
13,819.33
1941
4,317.12
13,411.93
For the years 1942 to 1945, inclusive, the petitioner deducted the amounts shown hereunder for traveling and advertising expenses: Year
Advertising
Traveling
1942
$ 207.22
$4,904.27
1943
763.90
4,652.20
1944
4,205.11
4,152.60
1945
2,983.84
3,229.22
The increases in the expenditures made by petitioner for advertising in the base period years 1936 and 1937, and for traveling in the base period years 1936, 1937, 1938 and 1939 were the consequence of a change made by petitioner in its model of gasoline pump by adopting the dollar and cents computer, and by the necessity of advising the trade of this change and of *137 meeting the competition of other gasoline pump manufacturers who had incorporated the dollar and cents computer in the models of gasoline pumps manufactured and sold by them. Petitioner did not, by reason of the abovementioned increases in advertising and traveling expenses in the base period years close any department, discharge any employees, or reduce any salaries. It continued to operate in the base period years as it had prior thereto, selling gasoline pumps to retail and wholesale customers in competition with other pump manufacturers, and shipping them to all parts of the world. During the base period years 1936 and 1937 the deductions taken by petitioner for advertising, and during the base period years 1936, 1937, 1938 and 1939 the deductions taken by petitioner for traveling expense were abnormal in amount within the meaning of section 711(b)(1)(J)(ii) of the Internal Revenue Code, and petitioner's excess profits net income for the base period years involved should be adjusted by adding thereto the amount of the abnormality or excess in the amount of these expenditures, as limited by the provisions of section 711(b)(1)(K)(iii) of the Code. These *138 abnormalities were not a consequence of an increase in the gross income of the petitioner in its base period, a decrease in the amount of some other deduction in its base period, or a change at any time in the type, manner of operation, size, or condition of business engaged in by the petitioner. Opinion In its petition the petitioner alleged as error the refusal of the respondent to allow it an additional excess profits credit arising from abnormalities in the amount of advertising and traveling expenses in the base period years. The amounts of the abnormal deductions which petitioner alleged the respondent erroneously refused to disallow in the base period years were set forth in the petition as follows: Advertising
1936
1937
1938
1939
Taxable year 1942
$6,323.07
$8,445.80
Taxable year 1943
6,323.07
8,445.80
Taxable year 1944
3,631.06
7,967.61
Taxable year 1945
4,852.33
8,445.80
Traveling
Taxable year 1942
$2,299.72
$4,960.24
$1,965.40
$1,601.23
Taxable year 1943
2,299.72
4,960.24
1,965.40
1,601.23
Taxable year 1944
2,299.72
4,960.24
1,965.40
1,601.23
Taxable year 1945
2,299.72
4,960.24
1,965.40
1,601.23
*139 The petitioner contends that advertising expenditures made in the years 1936 and 1937 and traveling expenditures connected with selling made in the years 1936, 1937, 1938 and 1939 were abnormal in amount in that they exceeded 125 per cent of the average of the respective preceding four years and that they did not fall within the prohibitions imposed by section 711(b)(1)(K)(ii). The pertinent provisions of section 711(b) are set forth in the margin. [1]
*140 The respondent contends that the abnormalities in the amount of the petitioner's expenditures for both advertising and traveling were a direct consequence of a change by petitioner in its manner of operation and perhaps in the condition of the business engaged in, and that petitioner has not established that the increase in such expenditures were not a consequence of a change in the size of its business. In support of this contention the respondent argues that when the petitioner in 1935 changed from the selling of a product which it manufactured in its entirety, but which had become obsolete, to the sale of a product which incorporated therein a purchased licensed mechanism that had revolutionized the industry, such a course of conduct must be characterized as a clear-cut change in the manner of operation. He also argues that the fact that petitioner's capital stock was increased from $50,000 in 1935, to $100,000 in 1936, and to $150,000 in 1937, and that there were increases in its total assets in each of the years 1936, 1937, 1938 and 1939, indicates that the increases in expenditures were a consequence of a change in the size of the petitioner's business. The respondent urges *141 that the facts in Wentworth Manufacturing Co., 6 T.C. 1201, 1208 [Dec. 15,178], are analogous to those in the instant proceeding. In the cited case a corporation began to employ inspectors and measurers in 1939 to overcome what it regarded as a serious defect in the manner of operation of its business. The fault in the manner of operation of the business was that too many garments which did not conform to the required standards of size were going out to customers, and many of these were being returned and had to be done over at additional cost to the taxpayer. The corporation decided to change, and actually changed the manner of operation of its business by employing about 30 inspectors and measurers who were instructed to watch the operations of the various employees, to discover where the mistakes in size were being made, and to eliminate the making of those mistakes as far as possible. Similar inspectors and measurers had not been employed during the years 1935 to 1938, inclusive. This Court held that there was a change in 1939 and 1940 in the manner of operation of the business of the taxpayer to the extent that inspectors and measurers were employed and used in *142 the business, and that the abnormalities for 1939 and 1940 in the wages of these employees were a direct consequence of that change. We think the facts of the instant proceeding are clearly distinguishable from those in the Wentworth case. The petitioner had engaged in advertising its pumps and had employed salesmen to sell them prior to 1936, and the manner of its operation did not change in that and subsequent years merely because it increased the amount of its advertising and employed additional salesmen. It continued to manufacture gasoline pumps as it had done in prior years. The only change made in 1936 was that petitioner started to manufacture a new model of gasoline pump. It was the same type of machine which had been manufactured prior thereto except that it had a device therein which computed gallonage and the dollars and cents of each transaction, whereas the machine it had been manufacturing prior thereto computed gallonage only. Bringing out a new model of a product regularly manufactured is not a change in the manner of operating or type of a business within the contemplation of the statute. Cf. Surface Combustion Co., 9 T.C. 631; Carborundum Co., 12 T.C. 287. *143 The burden of establishing that the claimed abnormalities in advertising and traveling expenses in the base period years involved were not a consequence of any one of the conditions mentioned in section 711(b)(1)(K)(ii) was on the petitioner. This Court has held that the most satisfactory and conclusive manner of meeting the burden imposed by this section is for the taxpayer to show that the abnormalities claimed are a consequence of something other than these conditions. William Leveen Corporation, 3 T.C. 593; R. C. Harvey Co., 5 T.C. 431, 443; Lorenz Co., 12 T.C. 263, 268. The evidence here indicates conclusively that the increased expenditures for advertising in 1936 and 1937 and the increased expenditures for traveling in 1936, 1937, 1938 and 1939 were the consequence of the change made by petitioner in its model of gasoline pump by adopting the dollar and cents computer, and by the necessity of advising the trade of this change and of meeting the competition of other gasoline pump manufacturers who had incorporated the dollar and cents computer in the models sold by them. We have made a finding to this effect. We think it follows from *144 this finding that the abnormalities claimed by petitioner could not have been a consequence of any increases in the gross income of petitioner in the base period, or of a change at any time in the type, manner of operation, size, or condition of the business in which it engaged. The fact that there were increases in the size of petitioner's business, its capital stock, its gross income and the amount of its assets during the base period years is immaterial unless the abnormalities were a consequence of these increases or any of them. The petitioner has established to our satisfaction that they were not. Our conclusion is, and we hold, that the respondent erred in refusing to allow the petitioner additional excess profits credit for each of the taxable years to the extent that its deductions for advertising taken in 1936 and 1937 and for traveling taken in the years 1936, 1937, 1938 and 1939 were abnormal in amount within the meaning of section 711(b)(1)(J) as limited by section 711(b)(1)(K)(iii) of the Internal Revenue Code. Decision will be entered under Rule 50. Footnotes
1. SEC. 711. EXCESS PROFITS NET INCOME. * * *
(b) Taxable Years in Base Period. - (1) General Rule and Adjustments. - The excess profits net income for any taxable year subject to the Revenue Act of 1936 shall be the normal-tax net income, as defined in section 13(a) of such Act; and for any other taxable year beginning after December 31, 1937, and before January 1, 1940, shall be the specialclass net income, as defined in section 14(a) of the applicable revenue law. In either case the following adjustments shall be made (for additional adjustments in case of certain reorganizations, see section 742(e)): * * *
(J) Abnormal Deductions. - Under regulations prescribed by the Commissioner, with the approval of the Secretary, for the determination, for the purposes of this subparagraph, of the classification of deductions - (i) Deductions of any class shall not be allowed if deductions of such class were abnormal for the taxpayer, and (ii) If the class of deductions was normal for the taxpayer, but the deductions of such class were in excess of 125 per centum of the average amount of deductions of such class for the four previous taxable years, they shall be disallowed in an amount equal to such excess. (K) Rules for Application of Subparagraphs (H), (I), and (J). - For the purposes of paragraphs (H), (I), and (J) - * * *
(ii) Deductions shall not be disallowed under such subparagraphs unless the taxpayer establishes that the abnormality or excess is not a consequence of an increase in the gross income of the taxpayer in its base period or a decrease in the amount of some other deduction in its base period, and is not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by the taxpayer. (iii) The amount of deductions of any class to be disallowed under such subparagraphs with respect to any taxable year shall not exceed the amount by which the deductions of such class for such taxable year exceed the deductions of such class for the taxable year for which the tax under this subchapter is being computed.↩