JAIME RAMÓN BRUGAT, Plaintiff and Appellee, *v.* SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellant.

No. 12682. Decided January 31, 1962.

*Hiram R. Cancio, Secretary of Justice,* and *Carlos G. Látimer,*
counsel for the Department of Justice, for appellant. *Rivera
Zayas, Rivera Cestero & Rua* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr.
Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The scope of the presumption of correctness [1] of the de-
terminations of the Secretary of the Treasury was clearly
stated in *Carrión* v. *Treasurer of P. R.,* 79 P.R.R. 350,
360–61 (1956), in the following words:

"According to the well-established rule, by virtue of such
presumption the Secretary of the Treasury is not bound to
present any evidence to establish the correctness of his tax de-
terminations, as long as no creditable and reasonable evidence
to support the taxpayer's contentions is offered and received.
However, if there is such evidence in the record, the presumption
is dissipated and the Secretary of the Treasury is then required
to present evidence in support of his contentions. If he does,
the trial court should determine the facts involved in the litiga-
tion as in any other civil case: on the basis of the preponderance
of the evidence. The only additional effect of such presumption
in reality is presented only as exceptional: after the evidence
is heard and the case has been submitted, if the trial judge finds

---

[1] On the presumption of correctness, see, also, *Borinquen Home Corpo-
ration* v. *Sec. of the Treasury,* 84 P.R.R. 154 (1961); *Vilanova* v. *Sec. of
the Treasury,* 83 P.R.R. 72 (1961); *Collazo* v. *Sec. of the Treasury,* 82
P.R.R. 629 (1961); *Vilanova* v. *Sec. of the Treasury,* 78 P.R.R. 768
(1955); *Cía. Marítima, Etc.* v. *Descartes, Treas.,* 78 P.R.R. 560 (1955);
*Soto* v. *Sec. of the Treasury,* 78 P.R.R. 169 (1955); *Buscaglia, Treas.* v.
*Tax Court and Galiñanes, Inc.,* 70 P.R.R. 883 (1950).

that the evidence of both parties on a particular issue is perfectly balanced, he should then pass judgment in favor of the Secretary of the Treasury because the burden is also on the taxpayer to persuade the trier. In other words, the taxpayer bears in fact two *risks*: the risk of nonproduction of evidence and the risk of nonpersuasion. We must speak in terms of 'risks,' since in the course of the trial either party may present evidence which is sufficient to comply with both aspects of the weight or burden of the evidence."

In the instant case, the pertinent facts of which we shall now summarize, it is necessary to bear in mind the aforesaid doctrine in order to dispose of an aspect therein which involves a question of procedure so far unexplored in this jurisdiction.

On March 8, 1956, the Secretary of the Treasury notified to appellee Jaime Ramón Brugat a tax deficiency for the tax year 1951, which was based on the disallowance by that officer of a deduction claimed by the taxpayer in the sum of $32,132.82, which represents the balance of a loss from the previous year carried over to the year in litigation. The Secretary stated in the notice that "this item is disallowed *because it is not a loss sustained in the operations of the business or industry in which he was regularly engaged...* but a loss resulting from a capital investment admissible as deduction in 1950, *when it was sustained,* but it is not admissible as a deduction, nor can the uncompensated portion be carried over to the year 1951, pursuant to par. 1, subd.(a) of § 9 of the Act." The loss referred to the value of certain shares owned by appellee Ramón Brugat in the domestic corporation Soler y Mascaró Auto Corporation, which had become a bankrupt in 1950.

The deficiency was confirmed after the regular administrative procedure. The taxpayer appealed to the Superior Court and specifically alleged that:

"The plaintiff alleges that there is no controversy as to the fact that the plaintiff sustained that loss in 1950, as it was

clearly determined by the defendant Secretary upon notifying on March 8, 1956 the deficiency object of reconsideration. The plaintiff now alleges, however, that inasmuch as the defendant Secretary assessed the deficiency object of this complaint on the ground that the 1950 loss was not a loss sustained in the operation of the business or industry in which the plaintiff was regularly engaged, such deficiency is erroneous, void, illegal, and contrary to law because in 1950 and 1951, some years prior and subsequent thereto, the plaintiff was engaged in the investment business in which he sustained the loss in 1950 in his investment in the business of 'Soler y Mascaró,' which loss is wholly deductible and can be carried over to 1951, because it was a loss in the investment business in which the plaintiff was regularly engaged in 1950 and 1951, and some years prior and subsequent thereto."

In the answer formulated the Secretary denied all of the facts alleged in the preceding paragraph.

Although no copy of the order issued at the pretrial conference was attached to the transcript of the record filed in this Court, from the exposition made by the attorney for the taxpayer at the commencement of the hearing in the trial court it appears that the Secretary "also raised the question that the plaintiff could not take the loss in 1950, because Soler & Mascaró had become a bankrupt in 1950 and in 1952 its trustee in bankruptcy had filed an action before this court (the Superior Court, against Financial Credit Corporation; that that action had been heard before this Court and that this Court had dismissed the complaint, but since appeal had been taken therefrom, the loss could not be claimed in 1950 but in the year in which the Supreme Court would dismiss the action." (Tr. Ev. 3 and 4.)[2]   It was also announced that the plaintiff would offer evidence to show that his investment

---

[2] The judgment of the Superior Court dismissing the complaint interposed by the trustee of Soler y Mascaró referred to by plaintiff's attorney was recently affirmed by this Court. *Monclova* v. *Financial Credit Corporation*, 83 P.R.R. 742 (1961).

in the said corporation "had been completely lost," and that he was "also" entitled to carry it over because it was a loss sustained in his industry or business (Tr. Ev. 4). It is well to point out that the Secretary had not requested, nor at any time requested, that the answer to the complaint be amended so as to include this affirmative defense on the nonexistence of the loss.[3] After hearing the argument of the parties on the issue, the trial court stated that "the court is going to determine whether or not the portion of the loss which was carried over to 1951 is deductible as a matter of law, whether or not the carrying over is in order. *That is all* the court is going to decide and consider in this action." (Italics ours.) The Secretary moved for reconsideration of this decision of the court in the belief that he was thereby deprived "of a good defense. . . that there is no such loss. . ."[4] (Tr. Ev. 13.)

We must now determine (a) whether in the course of the judicial proceeding challenging the administrative determinations of deficiencies the Secretary of the Treasury may support his action on additional and different grounds from those set forth in the notice to the taxpayer; and (b) if so, which are the limitations and consequences thereof.

▆▆▆ (a) Even at the risk of incurring a foolishness, it is necessary to point out that in a tax complaint the issue is the plaintiff's tax liability, as it appears from the determinations and readjustments made by the Secretary in connection with the return filed. The sole purpose of the controversy is the correctness of these determinations and

---

[3] Even though during the trial the Secretary's representative attached greater importance to the question of the impropriety of the deduction as a loss which did not arise from the taxpayer's business or industry, it can not be denied that on several occasions he referred to the nonexistence of the loss (Tr. Ev. 5, 7, 12, 13).

[4] Apparently, the respondent judge attached great importance to the fact that no deficiency was notified for the previous year of 1950, in which deduction was claimed for part of the loss.

readjustments, not the grounds adduced therefor.[5]  Hence, in the stage of judicial review the Secretary may adduce additional or inconsistent reasons in support of his administrative determination.  That is to say, the administrative action may be upheld on any ground, even though the same has not been urged in determining the deficiency.  *Hormel* v. *Helvering*, 312 U.S. 552 (1941) ; *Helvering* v. *Gowran*, 302 U.S. 238 (1937) ; *Blansett* v. *United States*, 283 F.2d 474 (C.A. 8, 1960) ; *cf. Bernstein* v. *Commissioner*, 267 F.2d 879 (C.A. 5, 1959).  In the instant case the real issue is whether the item challenged was duly reported in the taxpayer's taxable income, or whether he is entitled to its allowance as a deduction.

█ (b) However, when this occurs it seems fair to require that these other grounds be specifically alleged by way of affirmative defense.  *Jacob M. Kaplan*, 21 T.C. 134, 147 (1953) ; *Lorenz Co.*, 12 T.C. 263, 270 (1949) ; *Wentworth Manufacturing Co.*, 6 T.C. 1201 (1946).  Only then will the taxpayer be apprised of the Secretary's position and will be able to prepare himself adequately for the hearing of the case.  The existing rules of procedure bearing on the pleadings in an ordinary civil suit, particularly as respects the form and time to plead (Rules 10.1 and 10.8), amendments to the pleadings (Rule 13.1), and amendments to conform the pleadings to the evidence (Rule 13.2), are applicable to the allegation of these grounds.

█ █ However, it is necessary to establish clearly that, as respects these additional grounds which the Secretary may raise in the judicial proceeding of review and which he did not timely assign in the deficiency notice, he is not covered

---

[5] *A fortiori*, the same rule applies when no specific reason in assigned in the notice for the readjustment of the taxpayer's income.  *Standard Oil Co.*, 43 B.T.A. 973, 998 (1941).  It is clear that under these circumstances the taxpayer may resort to the procedures for discovery of evidence in order to be able to define the Secretary's position as to the reason or ground object of the readjustment.

by the presumption of correctness and that, as in the ordinary case of every affirmative defense, he has the burden of proof.[6] *Raymond W. Watts*, No. 60,182, PH Memo T.C. (1960) (in which the Commissioner disallowed a loss claimed in the sale of stock on the ground that the transaction was a sham, and subsequently in his brief alleged as additional ground that the cost or basis of the stock sold had not been established, thereby barring the computation of the amount of the loss; and it was held that the Commissioner could not allege this new ground and invoke the presumption of correctness in his favor, and that since he had the burden of proof and had not met it, the dismissal of the action was in order). *A. F. Lowes Lumber Co.*, No. 60,141 PH Memo T.C. (1960); *Leon Papineau*, 28 T.C. 54, 57 (1957); *Sheldon Tauber*, 24 T.C. 179, 185 (1955). See, in general, 9 Mertens, The Law of Federal Income Taxation, §§ 50.61 to 50.64 (Zimet 1958 rev. ed.); 2 Casey, Federal Tax Practice, §§ 7.3 to 7.5 and 7.24 to 7.27 (1955); Balter, Rules of Evidence Applicable in Proceedings Before the Tax Court of the United States: Burden of Proof and Presumptions 20–28; Paul, *A Plea for Better Tax Pleading*, 18 Cornell L.Q. 507, 515–17 (1933); Copelon, *Practical Problems on Burden of Proof in Civil Trials*, 10 N.Y.U. Tax Inst. 865 (1952). This is particularly true when as in the case at bar the adjudication of the propriety of the additional ground depends primarily on the presentation of oral and documentary evidence. It should be applied even more rigidly in those situations in which the additional ground is inconsistent with the reasons advanced in the deficiency notice

---

[6] Rule 32 of the Federal Tax Court expressly provides that "the burden of proof shall be on the petitioner, except as otherwise provided by statute, and except that in respect of any new matter pleaded in his answer, it shall be upon the respondent." It could be argued that the cases cited in the text of this opinion relate to the existence of this express provision, but this is not significant in view of the fact that tax proceedings are

for making the readjustment object of the deficiency. *Revell Inc.* v. *Riddell*, 5 A.F.T.R.2d 455, 273 F.2d 649 (C.A. 9, 1959) ; *W. H. Weaver*, 32 T.C. 411, 432 (1959) ; *Service Life Ins. Co.*, 6 A.F.T.R.2d 5481 (U.S.D.C. Neb. 1960) ; *Estate of William Beale Hibbs*, 16 T.C. 535 (1951) ; *Hull* v. *Commissioner*, 87 F.2d 260, 261 (C.C.A. 4, 1937) ; or when the new ground in support of the determination is raised at the trial, *Massingale* v. *United States*, 3 A.F.T.R.2d 995 (U.S.D.C. Ariz. 1959).

■ It is clear that when the ground stated in the deficiency notice is couched in broad and sweeping terms,[7] the Secretary may rely during the trial on any specific ground embraced in the reason stated in the notice, and even then he would have the presumption of correctness. *C. D. Spangler*, 32 T.C. 782 (1959), 278 F.2d 665 (C.A. 4, 1960), *cert. denied*, 364 U.S. 825 (1960) ; repealing *Thomas Wilson*, 25 T.C. 1058, 1066 (1956) ; *Sidney* v. *Commissioner*, 273 F.2d 928 (C.A. 2, 1960) ; *Arthur Sorin*, 29 T.C. 959 (1958), 271 F. 2d 741.

■ ■ In the instant case the Secretary could allege within the judicial controversy the nonexistence of the loss carried over which was claimed. However, since the defense was an affirmative defense which was also inconsistent with

---

governed locally by the Rules of Civil Procedure, according to which the burden of proof is upon the party alleging them, thereby attaining the same result. In a publication of Commerce Clearing House, Inc., entitled *Procedure and Practice Before the Tax Court of the United States*, p. 137 (16th ed. 1956), it is said that this exception to the rule on the burden of proof is a matter of application of the general principles regarding evidence to the effect that the burden of proof is on the party alleging the fact.

[7] As examples, we have the inclusion of certain amounts in the taxpayer's income making reference to the definition of gross income without specifying the source of the income, the disallowance of a deduction on the ground that the amount claimed is not an admissible deduction, etc. As in the case of a notice in which no reason is assigned, the taxpayer may limit the controversy to specific grounds through the procedure for discovery of evidence.

the grounds adduced in the deficiency notice,[8] he had the burden of proof for the purpose of defeating the taxpayer's challenge. Although the answer was not amended in order to include this affirmative defense,[9] we are satisfied that it was raised at the pretrial conference and that the complainant was apprised of the Secretary's position. The Secretary's failure to specifically plead the defense or to request leave to amend his answer no doubt influenced the trial court in confining the controversy to the determination of the carrying over of the loss.

For a fair adjudication of the controversy, the judgment rendered will be set aside and the case remanded in order that the trial court may receive evidence on the special defense of the nonexistence of the loss [10] and make the corresponding determinations.

---

[8] An examination of the notice reveals that the Secretary accepted the existence of the loss in the value of the stock in 1950: he mentions in the explanation of the items altered that the loss resulted from a capital investment "admissible as deduction in 1950, *when it was sustained*,"; he refers to the "uncompensated portion" as not being subject to be carried over to 1951, and mentions a specific section of the Act—§ 9(a)(1)—in support of his determination.

[9] Apparently, the Secretary relied on the fact that the denial in the fifth paragraph of the complaint was sufficient for this purpose. We do not agree, since that averment, weighed as a whole, clearly poses the impropriety of the administrative action on the basis of the only ground adduced until then, namely, that the loss was not sustained in the taxpayer's industry or business.

[10] On this point, see art. 120, in connection with art. 123 of Regulations No. 1, of the Income Tax Act of 1924; *Boehm* v. *Commissioner of Internal Revenue*, 326 U.S. 287, 294 (1945); *United States* v. *White Dental Mfg. Co.*, 274 U.S. 398 (1927); *Denver & Río Grande Western Railroad Co.* v. *Commissioner*, 279 F.2d 368, 375 (C.A. 10, 1960); *In re Harrington*, 1 F. 2d 749 (Mo. 1924); *Walter E. Templeman*, 20 B.T.A. 493 (1930); 5 Mertens, *op. cit.*, § 26.68; Lynch, *Losses Resulting from Stock Becoming Worthless—Deductibility under Federal Income Tax Laws*, 8 Fordham L. Rev. 199 (1939); Brown, *The Time for Taking Deductions for Losses and Bad Debts for Income Tax Purposes*, 84 U. of Pa. L. Rev. 41, 46 (1935); *cf. Valdés* v. *Tax Court*, 71 P.R.R. 670 (1950); *Díaz* v. *Tax Court*, 69 P.R.R. 789 (1949).